CRAIG *vs* ELY, ex'or.

1. An attorney at law can not legally transfer, in payment of his private debt, a note, placed in his hands for collection, so as to bind his client thereby, either in law or in equity.

2. Where A, being an attorney, received from B, a note, drawn by C, for collection, and A, being indebted to D, transferred the note, in payment of his debt, to D, under an arrangement, entered into between D and C, and himself—held that Chancery had the power to decree against C, for the amount of the note, so transferred by A.

In error to the Circuit Court of Lauderdale, exercising Chancery jurisdiction.

This was a bill in Chancery, filed by Ezra Styles Ely, executor of the last will and testament of Samuel Carswell, deceased, against Samuel Craig, Peter Blow and George A. Dawson.

The bill set forth, that on or about the nineteenth day of August, one thousand eight hundred and twenty-two, Samuel Craig executed a note to orator, as executor of Samuel Carswell, for the sum of seventeen hundred and twenty-one dollars and thirty-seven cents, at three days' sight, for goods, wares and merchandise, bought by the said Craig, of said Carswell, previous to the latter's decease. In November, one thousand eight hundred and twenty-four, orator placed said note in the possession of George A. Dawson, an attorney at law, with instructions to collect it, and remit to orator, residing in Philadelphia; and on the twentieth day of August, one thousand eight hundred and twenty-five, said

Dawson paid to orator, the sum of eight hundred and seventy-seven dollars and seventy-three cents, previously collected of Craig, in part payment of said note.

In the fall of the year, one thousand eight hundred and twenty-seven, said Dawson collected from Craig, the further sum of one hundred and ten dollars, which he applied to his own private use—being, at that time very greatly embarrassed, and, (as charged,) insolvent.

About that time, the said Dawson, being largely indebted to the said Peter Blow, proposed to transfer the note of said Craig, which he held, in right of orator, to said Blow; to which the latter, at once, acceded. Blow, well knowing that Dawson had no authority over said note, except so far as related to its collection, immediately sought Craig, and influenced him to comply with the arrangement, by proposing time for the liquidation of the balance of the note. The said arrangement was subsequently effected, by Craig executing a new note, payable to Blow—all, as alleged, to evade the circumstances, arising from Dawson's want of authority to transfer the said note. All which, orator alleged, was contrary to equity and good conscience; and prayed relief, &c.

The answer of Peter Blow, did not controvert the allegations, respecting the execution of the note, by Craig; or the delivery, thereof to Dawson; but called for proof—admitted that Dawson had a claim in favor of complainant, for collection, but insisted that he understood Dawson to have full and ample power to settle it according to his discretion.

It set out, that Dawson was indebted to respondent, for board, and proposed to give, and did give respondent a draft on Craig, for the sum of three hundred dollars; which Craig, without hesitation, accepted. That respondent did not know on what account the draft was then drawn. That subsequently, Dawson being about to leave the County, respondent became uneasy about his debt, and urgent for its payment. That Dawson informed respondent that he could get money from Craig, and that he would give an order for it: that Dawson having delayed this proposition, respondent went to see Craig; that the latter informed him that Dawson held a claim on him, in favor of a person in Philadelphia; but, as he did not know the extent of Dawson's authority to arrange it, he would go and see him. Respondent denied, however, that he used any persuasion or held out any inducements to Craig. That, on seeing Dawson, he informed him of Craig's doubts of his authority to arrange the matter, with a view to the liquidation of respondent's debt: that Dawson stated he could satisfy Craig. That subsequently Dawson and Craig called on the respondent, and expressed themselves willing to enter into the proposed arrangement. That respondent then urged Dawson to give an order on Craig, and that Craig should accept it, which Dawson declined: that Dawson said he wished to pay other creditors, in Florence, and obtain sufficient money to bear his expenses to Philadelphia, whither he contemplated going. That it was finally agreed that respondent, (as it would be inconvenient for Craig,) should assume and pay off the debts of Dawson: that in pursuance of that

agreement, he did pay off, and discharge sundry debts of Dawson.

Respondent averred that it was in good faith he entered into the arrangement, not doubting Dawson's power to settle the matter according to his discretion—and that he believed it to be true that Dawson, in pursuance of this agreement, did release to Craig a claim in favor of the complainant.

The answer of Craig admitted the execution of the note, and that it was placed with Dawson for collection. That on this note he made sundry payments to Dawson; that in November, one thousand eight hundred and twenty-seven, there was due on said note one thousand and fifty dollars and fifty cents; that Dawson, at that time, applied to respondent for payment, and it being out of his (Craig's) power to comply immediately, Dawson stated that he was indebted to Blow, and that he expected that an arrangement could be effected between Craig and Blow. That to such an arrangement Craig assented: and some time thereafter, Blow called on Craig, informed him that Dawson was indebted to him, and that Dawson wished to transfer to him Craig's note, and desired Craig to visit Florence: that some time afterwards, he did go to Florence, and met with Blow and Dawson, when a calculation of the balance due upon the note was made, and Craig at the request of Blow and Dawson, (the latter insisting that he had full power,) executed his note payable to said Blow, for one thousand and fifty dollars and fifty cents, and received his note given to complainant.

Craig averred, that this matter was, so far as he

was concerned, effected in good faith, and by reason of the general authority given to Dawson, as an attorney; he also relied upon a letter filed as an exhibit, and written to him by the complainant.

Dawson also answered, admitting all the material allegations of the bill—confessing that he had no authority to make the transfer, and that he had not paid complainant the amount—admitting his insolvency, &c.

The letter filed as an exhibit to the anwer of Craig, was in the following words, to wit:

"*Philadelphia*, September 20, 1827.

" Mr. SAMUEL CRAIG,

" Lauderdale County, Alabama.

" Dear Sir—On the 20th August, 1825, I received from George A. Dawson, Fsq. of Florence, Alabama, $877 $\frac{73}{100}$, in part payment of your debt, to the estate of Samuel Carswell, deceased. At that time he gave me your promise for the balance in the course of a year. The design of this letter is, to enquire if you have paid Mr. Dawson the balance of your debt. If you have not done it, I hope you will do it speedily. Please, sir, to reply to this letter as soon as may be convenient.

" Yours, respectfully.

" EZRA STYLES ELY,

" Ex'or to est. of Sam'l

" Carswell, dec'd."

The only witness in the cause, was one M'Kensie, who testified that he had heard Blow converse in relation to the transfer of the note from Craig to himself: he stated that he believed Blow knew the note

was not the property of Dawson; but that, as agent of complainant, he was empowered to dispose of it. Heard Blow say, that Dawson stated he had property in Philadelphia, out of which he would pay to Ely the amount of the note transferred to Craig.

On a final hearing on the bill, answer and exhibit, the bill was ordered to be dismissed, as to Blow, and a decree rendered against Craig, for the balance due upon the note at the time it was transferred, together with interest.

On this decree the defendant Craig, took a writ of error to this Court.

*P. Martin*, for plaintiff in error, contended that the decree was erroneous.

1st. Because chancery had no jurisdictisn of a case like the one at bar. There being a full and adequate remedy at law.—1 Hopk. Ch. R. 56, 75.— The only ground of equity jurisdiction must have been the *fraud*. Then where lay that fraud? If any where, in Dawson and Blow, against which latter no decree was rendered.

2nd. Inducements were held out by Dawson and Blow, to Craig, and as to them no decree was had, which was surely error, because if Craig was only the *victim* of a fraudulent concert between Dawson and Blow, there could be no decree against him,— at all events alone. So viewing the case only in reference to Craig, there is no equity in the bill.

*P. Anderson*, contra.

The bill was filed for the purpose of reasserting a right, which Dawson had no power to deprive the

complainant of. The only equity necessary to establish the right of complainant to recover, Craig in his answer admits.—He admits that Dawson was an attorney, and had this note for collection. He was therefore bound at his peril, to know the extent of Dawson's authority.

Dawson, as an attorney, having the note for collection, could only stand in the situation of a special agent: and the complainant had power to follow his rights to the possession of any person into whose hands they passed by Dawson's fraud. The rights in the hands of an attorney cannot be disposed of, nor compromised.—3 Stewart, 23; 10 Johns. 220; 9 Johns. 263; Ld. Raym. 930; Paley, 220.

This was a proper case for the action of a Court of Chancery. The acts of Dawson impeded our rights, by fraud; and wherever that fraud led them, we had a right to go.—17 Ves. 112, 1 Johns. C. R. 517.

We had no right nor power to resort to law, because the note must be produced. Here we could not produce it. It had passed out of our possession: and chancery was our only relief. Even if the remedy at law is doubtful, chancery may be resorted to.—2 Stewart, 423.

It is said the Court erred in not decreeing as to Blow. The complainant had no right to a decree against Blow. A decree as to Blow might do equity between Blow and Craig, but with that complainant had nothing to do. It was a matter to be litigated between themselves.

*Goldthwaite*, in reply.

CRAIG vs ELY, ex'or.

THORNTON, J.—This case comes before this Court upon writ of error to a decree in Chancery, in favor of the defendant, upon a bill filed against the plaintiff in error, together with one Peter Blow, and George Augustus Dawson.

The writ of error is prosecuted by Craig alone.—The cause was heard and determined upon the bill and answers, and the deposition of one witness, whose testimony is considered as not affecting the merits of the case, and need not be noticed in the decision now to be pronounced.

The bill exhibits this state of facts: Some time in August, one thousand eight hundred and twenty-two, the plaintiff in error executed to the defendant, as executor of Samuel Carswell, a note of hand, for the sum of seventeen hundred and twenty-one dollars and thirty-seven cents, payable at three days' sight—which note, in November, one thousand eight hundred and twenty-four, was placed in the hands of said Dawson, as an attorney at law, for collection. That Craig paid to Dawson, at different times, towards the discharge of the said note, nine hundred and eighty seven dollars and seventy-three cents; all of which, except one hundred and ten dollars, was remitted to the defendant, at Philadelphia, where he resides. That afterwards, the said Dawson, in violation of his duty, and good faith, as an attorney, surrendered the said note to the plaintiff, upon the plaintiff's assuming to pay to the said Blow, the amount of money still due upon the said note, in discharge of a debt, which he, Dawson, owed, on his own account, to the said Blow.

5 s. & p.          46

The bill charges, that those parties, all of whom are made defendants, combined and confederated, to injure and oppress the defendant, well knowing that the said Dawson had no authority to make any such disposition of the note. That the said Dawson was, in their knowledge, much embarrassed at the time, and has, ever since been hopelessly insolvent.

The bill, upon the final hearing was dismissed, as to Blow, so that his answer may be laid out of view.

The answer of the plaintiff in error insists that he acted in good faith, and with a full belief that said Dawson was authorised to make such disposition of his note to the defendant. That he was assured, by Dawson, that he was authorised to do so; and that he, (Dawson,) on his arrival at Philadelphia, could, and would arrange the matter with the complainant.

It is clear, from the whole answer of the plaintiff in error, that, notwithstanding any assurances of Dawson, as to his power to pay off his own debt, in this manner, with the note of his client, the plaintiff did not rely upon special authority to Dawson, over and above what is usually implied from the relation of client and attorney. In his answer he uses this language: "That said arrangement, on his part, was made in good faith, and with a full belief that said Dawson was authorised to do so; more particularly as well on account of his general authority, as an attorney, as on account of a letter received from complainant, in September, one thousand eight hundred and twenty-seven; and which is herewith filed, and marked 'exhibit A,' by which he was directed to settle with defendant Dawson, speedily."

No inference can be drawn from the letter, except this, that the defendant was anxious, without more delay, to receive from the plaintiff, the balance of the debt, which still remained unpaid. It acknowledged payment of part, adverted to a promise to pay the remainder within a specified time, communicated through Dawson, and concludes, as usual, with a request of speedy payment.

Upon this state of facts, the Chancellor decreed, as though no such negotiation had ever transpired— that the plaintiff in error should pay to the defendant, all the balance of principal and interest due, according to the terms of the original note, after allowing the credit for all which had been paid to Dawson.

There was no prayer for any decree against Blow, except for an injunction of his suit against the plaintiff; and as to him the bill was properly ordered to be dismissed.

The alleged uncertainty of the decree, as between the parties to the cause in this Court, need not be adverted to, further than to say that the item in which it is supposed to consist, to wit, the sum of one hundred and four dollars and fifty cents, being part of what was paid to Dawson, is clearly not decreed against the plaintiff in error, and so furnishes no ground of complaint to him.

There are, as we conceive, but two questions for us to decide in this cause. The first is, whether, from the facts, there is any ground for a recovery of the sum of money decreed, either at law or in equity; and, secondly, if there be such right, whether it was sought in the proper forum.

If the whole arrangement, disclosed in the bill, and admitted by the answer, had been completed, except the surrender to the plaintiff, of his note to the defendant, by Dawson, and an action had been brought upon the note at law, against him, there could be no doubt of a recovery, so long as the doctrine laid down by this Court, in the case of *Gullet and Lewis* is recognised as authority, and we are not prepared to overrule that decision.

There are, sometimes, it must be admitted, questions of nice and difficult solution, growing out of the relation of attorney and client, but the one here brought into contest, is of so plain and obvious a character, that it is almost uncredible how one could be ignorant on the subject. The duty of an attorney, not to use the securities of his client, left with him for collection, in discharge of his own debts, seems so palpable, that the supposition of authority to do so, involves an absurdity, not to say a contradiction in terms.

If, however, the belief of such an authority were honestly entertained, it could not purchase an exemption from the loss, which I think, follows as a just consequence of such witless credulity.

The doctrine, that, "he who trusts most, musl lose most," can not apply to cases like this. I lend my horse to a friend to ride to town, or I procure a wagoner, for hire, to break him to the draft—whilst in his possession, an innoc ent, but a credulous man buys him of the person, to whom, for a specific purpose, the possession has thus been delivered. Now, which can be said to trust the most here, the owner of the horse, or the improvident purchaser? I think

the latter trusted as much, in paying his money to a pretended owner, as the real owner did, in parting with the possession; and, if the balance of equity, when poised between the parties, may be inclined to one side or the other, by their motives of conduct, as a general rule, those who seek to escape responsibility, in cases like this, are more reckless than innocent, and usually act under the temptation of some inordinate gain.

In the case, under consideration, the reluctance of the plaintiff in error to enter upon this arrangement, as he terms it, seems only to have been overcome by the assurance of longer indulgence. For that benefit, he *trusted*, that Dawson would pay his debt to the defendant, if he would pay Dawson's debt to Blow. He has equally trusted Dawson, with the defendant, and has been equally deceived; but, under circumstances which entitle him to far less sympathy or favor.

From these considerations, we think the *right* of the defendant in error can admit of no doubt; and we proceed to consider whether he has sought his relief in the proper tribunal.

It has been held a sufficient ground for equitable cognisance, that a party was *hindered* from prosecuting his legal remedy. The very evidence of his debt, and, according to our laws, the foundation of his action, was, in this case, improperly obtained, and withholden from him.

Admit, that an action of detinue would have lain, to recover the note—yet, the judgment, in such action, would have been in the alternative; and, by surrendering the note, the defendant in error, at the

end of such an action, would only have been at the beginning of another, which would still have been necessary to obtain satisfaction of his just demand. It will be admitted, as a general rule, that whatever form of action he adopted to recover the amount secured by a promissory note, whether debt or assumpsit, the plaintiff can not recover under our statutes and rules of practice, without producing the instrument, itself.

The act of one thousand eight hundred and twenty-eight, which gives an action at law, upon a lost instrument of writing, is expressly confined to such cases, as where the party will make oath, that the evidence of his claim, whether bill, bond, or promissory note, has been destroyed by fire, or lost by accident. Here, the oath required could not be taken; and the party, having been hindered in the pursuit of his original legal remedy, by the improper conduct of the plaintiff in error—thus interposing doubt and difficulty in his way, we do not think, that he should be now thrown into another forum for redress.[a]

The decree must be affirmed.

a 1JohnsCh Rep. 463; 2 Stewart, 423.