# CHAPMAN, LYON & NOYES vs. COWLES.

[MOTION TO SET ASIDE ENTRY OF SATISFACTION OF JUDGMENT.]

1. *Payment of judgment to sheriff.*—A sheriff has no authority to receive the money due on a judgment, except when he has an execution in his hands; and his receipt of the money without such authority neither discharges the judgment, nor imposes any liability on his sureties; yet, if he pays over the money to the plaintiff's attorneys of record, and it is received by them in satisfaction of the judgment, the debt is thereby discharged, if the payment was made in lawful money.

2. *Payment to attorney, of depreciated paper currency.*—An attorney-at-law has no authority to receive depreciated paper currency, in payment of a judgment; and if he does so receive it, his client may either proceed against him individually, thereby ratifying the payment, or may proceed against the debtor.

APPEAL from the City Court of Montgomery.
Tried before the Hon. THOS. M. ARRINGTON.

THE appellants in this case recovered a judgment against the appellee, on the 7th March, 1861, in the county court of Montgomery, (whose records were afterwards transferred to said city court,) for six hundred and eighty-six 85-100 dollars. An execution was issued on this judgment on the 25th March, 1861, which was placed in the hands of W. G. Waller, who was then the sheriff of said county; and on which the following endorsements were made by J. Y. Brame, who was the successor of said Waller as sheriff: "Plaintiffs being alien enemies, principal not collected, costs paid by the defendant, August 29, 1861"; "This execution is satisfied, March 3, 1863." At the June term, 1866, of said city court, the plaintiffs moved the court to set aside this return or entry of satisfaction, and to re-issue execution on their judgment. On the hearing of this motion, as the bill of exceptions states, the plaintiffs introduced said Brame as a witness, who read from his docket the entries relating to the execution, as above stated, and testified,

"that he received from the defendant, in satisfaction of said execution debt, Confederate States treasury-notes, which were at that time the common currency; that he had received no instructions from plaintiffs to accept said notes in satisfaction of said execution; and that he paid over said treasury-notes to Messrs. Martin, Baldwin & Sayre, (who were the attorneys of record of the plaintiffs, and who had obtained said judgment,) and took from them their receipt on his docket"; which receipt he read, and which purported to be "in full of plaintiffs' demand." The plaintiffs then introduced P. T. Sayre as a witness, who testified, "that he was a member of the firm known as Martin, Baldwin & Sayre; that said firm obtained the judgment in this case; that he signed the receipt on the sheriff's books; that the notes received by him were Confederate States treasury-notes; that neither he nor his firm had any communication with the plaintiffs since the commencement of the rebellion, until within the last three months, when they received a letter from the plaintiffs, stating that they (plaintiffs) were informed that the debt or judgment was paid, and if so, that they could retain their commissions, and remit the money; that they stated, in reply to this letter, that the debt was collected in Confederate treasury-notes, which were subject to their order; that plaintiffs had not since communicated with them; that the only instructions received by them from plaintiffs, were the usual instructions given to attorneys, 'to collect the debt, and remit proceeds, less the usual commissions'; that no directions or instructions were at any time received to receive in payment of said debt the currency or treasury-notes of the Confederate States; and that since the payment was made for which said receipt was given, plaintiffs had not ratified, or in any way consented to the same. This being all the evidence in the case, it was submitted to the court for decision; and the court overruled the motion, after due deliberation;" to which the plaintiffs excepted, and which they now assign as error.

J. Q. SMITH, with whom was JNO. A. ELMORE, for the appellants.—1. The sheriff had no authority, after the return term of the execution, to receive payment of the judgment.

*Bobo v. Thompson,* 3 Stew. & P. 385 ; *Barton v. Lockhart,* 2 Stew. & P. 109 ; *Holt v. Robinson,* 21 Ala. 106.

· 2. Even if he had a valid execution in his hands, he was not authorized to receive Confederate treasury-notes, or other illegal currency, in satisfaction of it, although that currency may have been at the time the common circulating medium of the country.

3. The subsequent payment of the money to Martin, Baldwin & Sayre, and their acceptance of it in discharge of the debt, can not affect the plaintiffs' rights.   The state of war then existing, and the positive statutory enactments of the two contending governments, prohibited all commercial intercourse between citizens of the two sections, and terminated the relation of attorney and client between plaintiff and said attorneys.   If that relation still continued, said attorneys had no authority, general or special, to receive illegal or depreciated currency; and although their receipt of such currency might, at the plaintiffs' option, render them liable for the debt, it could not affect the plaintiffs' right to proceed against the original debtor.

WATTS & TROY, *contra.*—The sheriff had a right to receive the common currency of the country, though depreciated, in payment of the execution in his hands.—*Haynes v. Wheat & Fennell,* 9 Ala. 239, and authorities there cited.   Although the return term of the execution had passed, the subsequent payment of the money to the plaintiffs' attorneys of record, and their acceptance of it in satisfaction of the execution, discharged the debt as against the defendant.— *Dubberly v. Black's Adm'r,* 38 Ala. 193.

BYRD, J.—The appellants recovered a judgment against the appellee, in 1861.   On the 25th of March of the same year, an execution issued on the judgment, and was placed in the hands of the sheriff, who made a return, dated August 29th, 1861, that, "plaintiff being an alien enemy, principal not collected, costs paid by defendant"; and on the 3d March, 1863, the sheriff endorsed on the execution, "This execution is satisfied," and signed his name thereto.

8

It does not appear that any other execution was ever issued on the judgment. On the 16th March, 1863, the sheriff paid the currency collected on the judgment to Messrs. Martin, Baldwin & Sayre, the attorneys of record of appellants, and took a receipt from them, "in full of plaintiffs' demand." It is apparent from the record, that the sheriff had no other execution in his hands than the one issued in March, 1861. He therefore had no authority to receive the money in 1863, so far as the record shows; and his endorsement on the execution, issued in 1861, of satisfaction, could not, and does not, bind his sureties on his official bond. *Bobo et al. v. Thompson et al.,* 3 Stew. & P. 385; *Barton v. Lockhart,* 2 Stew. & P. 109; 13 Ala. 526.

But the collection of a judgment by a sheriff, who has no authority to collect, and a subsequent payment of the money to the attorneys of the plaintiff of record, and the receipt thereof by them, in satisfaction of the demand, would, in law, be a discharge or satisfaction of the judgment.—*Dubberly v. Black's Adm'r,* 38 Ala. 193. But, to make a payment valid and a satisfaction of the judgment, in such a case, the money paid to the attorneys must be *lawful money,* or such as the law recognizes as a satisfaction.

[2.] The question in this case is, whether a creditor is precluded from proceeding against his debtor for payment of a debt or judgment, after the debtor has paid the attorney of the creditor depreciated paper money which is current, in satisfaction of the debt or judgment. We propose to notice some of the decisions bearing on this question, and the general authority of an attorney, and to deduce some principles therefrom which will be decisive of this case.

The case of *Jones et al. v. Ransom,* (3 Ind. 327,) was a proceeding to revive a judgment; the defendants relied on a compromise made with the attorneys of the plaintiff, and a ratification thereof by him, as a defense to the proceeding. The court held, that "the plaintiff was not bound by the compromise at the time it was made; the attorneys-at-law having no authority to make it." The case was reversed, on the question of a ratification by the plaintiff of the compromise. The case of *Abbe et al. v. Roads,* (6 Mc-

Lean, 107,) is, in principle, the same as the case of *Jones v. Ransom, supra.*

The case of *Jewett et al. v. Wardleigh,* (32 Maine, 110,) holds, that "an attorney-at-law has no authority, *in virtue of his general employment,* to discharge an execution in favor of his client, unless upon payment of its whole amount." To the same effect, see the case of *Jenney v. Delesdernier,* 20 Maine, 183. An attorney of record in a judgment has no authority to accept a deed of trust for his client.—*Doub v. Barnes,* 4 Gill's R. 1.

In the case of *H. & G. Vail v. Conant,* (15 Vermont, 314,) it is held, that the power of an attorney is confined to the prosecution of a suit, and the incidents properly connected therewith, and does not extend to the compromising and discharging of the client's cause of action, without receiving his full claim.

The case of *Lewis, adm'x, v. Gamage,* (1 Pick. 347,) was an action against the original debtor, by a creditor, whose attorney received one hundred dollars on a judgment for seventy dollars damages and fifty-five 6–100 dollars cost, *in full of the same,* and made the following endorsement on the execution : "January 2, 1821. Received one hundred dollars in full discharge of this execution"; and the court held, that "the creditor may, perhaps, maintain an action against the attorney for making such a compromise, but this does not affect the debtor ; he is not injured by being compelled to pay the whole debt."

In the case of *Smock v. Dade,* (5 Rand. 639,) which was a motion to quash an execution, on the ground that the debtor had paid the judgment to the attorney of plaintiff, in money and a bond on a third person, the court held, that " an attorney-at-law has no right to receive a bond from a debtor, in discharge of his client's claim, without the assent of the client. If he does, he is the agent, not of the plaintiff, but of the defendant, and the plaintiff may still proceed against the defendant."

In the case of *Jackson v. Bartlett,* (8 John. 285,) it is held, that an attorney has no " authority, from his general character, to discharge the defendant from execution on *ca. sa.,* until the money was paid."

Chapman, Lyon & Noyes v. Cowles.

In the case of *Baldwin et al. v. Merrill*, (8 Humph. 132,) the court say: "The attorney of the plaintiffs has no authority, as such, to receive a note, or any thing but money, in satisfaction of the judgment."

The case of *Commissioners, &c., v. Rose*, (1 Dess. Eq. 464,) was a suit against the debtor, who had paid the attorney of the creditor, in a currency different from that stipulated in the contract, and less valuable, and the attorney surrendered up the contract to the debtor; and the court held the debtor liable, saying: "The defendant Tunno having acted contrary to the trust or confidence reposed in him, the defendant Rose must seek redress against him, for whatever damages he may sustain. And as on the one hand, the State would have been bound by the defendant Moultrie's act, if he had actually received the specie or indents for Rose's debt; so on the other hand, as he has not received the specie or indents, Rose shall not be released from payment, although his bond has been cancelled. Creditors would be placed in a perilous situation, indeed, if, by the combination of an attorney with the debtor or his agent, a receipt, without payment of the money, should be deemed sufficiently valid to discharge the debtor from his obligation."

In *Fitch v. Scott*, (3 How. Miss. R. 314,) the court held, that "an attorney has no authority to compromise the claim of his client; and if he does so, he takes upon himself the consequences of its loss, or the damages which he may sustain."

In *Clark & Co. v. Kingsland*, (1 Sm. & Mar. 248,) the court say: "It is the business of an attorney to collect the money on claims placed in his hands for collection, and his authority as an attorney extends no further." It seems that the attorney of the plaintiff had received, in part payment of a judgment, an assignment of another judgment, and gave a receipt in payment and discharge, *pro tanto*, to the debtor, who, having paid the balance of the judgment, moved the court for an entry of satisfaction. The court further say: "Any receipt, given by an attorney for such security, although it profess to be in satisfaction or payment, is not binding on his client, nor is it a legal discharge

of so much of the debt. The attorney may, in this manner, make himself liable, and the client may rest content with that liability, if he chooses; but, if he has obtained a judgment, he is not bound to relinquish it, and accept other securities which his attorney may have agreed to take."

In *Keller v. Scott*, (2 Sm. & Mar. 83,) the court say: "The general authority of an attorney is necessarily liberal and broad, during the progress of the suit, and up to the consummation of the judgment, and through the process of execution; but it can not be permitted to extend to a power to alter or risk the rights of clients, by a substitution of the character of the satisfaction of the execution, without the consent of the plaintiff; nothing short of the payment of the amount of the judgment, in *lawful money*, is a satisfaction of the execution."

The case of *Anketell v. Torrey*, (7 Sm. & Mar. 473,) is a case quite in point. The sheriff had received, by the consent of the attorney of plaintiff, payment of an execution in the notes of the Union Bank, which were current at the time. The court held, "that no payment of an execution, in any thing short of lawful money, to-wit, coin of the United States, will amount to a satisfaction, unless it be with the consent of the plaintiff in the execution."

In the case of *Lawson v. Bettison*, (7 Eng. 401,) the court say, that it had been adjudged by that court, "that an attorney-at law, who acts under his general authority as such, has no power to receive, nor to give directions for the receipt of, any thing but legal current money upon executions for their clients; and that in such a case, the debt remained unpaid, and that the plaintiff in execution might elect to set aside the sheriff's return, and sue out an *alias* execution, or sue the attorney for the value of the debt collected." It is also, in effect, held, that "an attorney is not authorized to receive depreciated paper, *at its real value*, or other property, in payment of his client's judgment, unless by his *express* authority; and if he receives such, may issue execution without regarding it as a payment."

It is also held, in the case of *McCarver v. Nealey*, (1 Iowa, 360,) "that an attorney has no right to receive any thing but money in satisfaction of a demand placed in his hands

for collection, unless especially authorized to do so by his client"; and in this case, the creditor was permitted to proceed against the debtor for the money.

In the case of *Walker v. Scott,* (8 Eng. 648,) the court say : "An attorney, under his general retainer, has no power to receive property in payment of his client's debt, not even depreciated paper"; that he " could not even have received payment in depreciated paper currency, though circulating at a small discount as money."

In *Trumbull v. Nicholson,* (26 Ill. 149,) which was a proceeding by the creditor against the debtor, who had satisfied a judgment to the attorney by a payment, in part, of depreciated bank-bills, the court say : " The attorney might as well take cattle, or corn, as any thing but money|; or he might take less than the amount of the judgment, in full satisfaction, as to take depreciated currency"; and further : " But, admitting that he retained all his original powers, yet he was not authorized to receive any thing but money, or, at least, that which was equivalent, and actually treated as coin, in satisfaction of the judgment."

The case of *Bracket v. Norton,* (4 Conn. 517,) is not in conflict, but reconcilable, with the cases above cited. The only case I have found in the American reports, in antagonism to those cases, is the case of *Livingston v. Radcliff,* (6 Barr, 205,) in which the court intimates, that an attorney may receive, in part-payment, " a note for two or three days, of a person of undoubted responsibility."

We will now notice, briefly, the decisions of this court. The case of *Kirk v. Glover,* (5 Stew. & P. 340,) was an action of trover, for the value of a bond, which the attorney of plaintiff had taken in payment of a judgment, without any authority from the plaintiff, and which the attorney had sold to the defendant Glover. The court held, that the attorney had "no right to take a bond in satisfaction of the judgment, without the consent of his client ; but that the plaintiff might show a ratification of the act of the attorney in taking the bond, after the transfer of the bond, and that the fact of ratification is one for the determination of the jury, from all the circumstances of the case.

In the case of *Craig v. Ely,* (5 Stew. & P. 354,) a bill was

filed by a creditor against a debtor, to recover the balance due on a note, which had been surrendered by the attorney of the creditor to the debtor, in consideration of a new note executed by the debtor, payable to a third person, who was a surety on the original note, and to whom the attorney was indebted.   The court held, that the attorney had no authority to make such an arrangement, and that the original debtors were liable; and that a bill in equity was sustainable on the facts of the case.   *This,* and the case of *The Commissioners, &c., v. Rose, (supra,)* are the only cases where the creditor resorted to a court of equity to enforce his claim.

The case of *Gullet v. Lewis,* (3 Stew. 23,) was an action by the holder of a promissory note, against the maker, who had made an agreement with the attorney of the plaintiff to take another debt for it; but the note was not given up; and the court in which the case was tried charged the jury, that if they believed the witness held the note as agent or attorney of the plaintiff, and made an agreement with the defendant to take a note or debt due from himself in payment of the plaintiff's note, and that the contract was completed, although the note was not given up, that it did discharge the debt.   On writ of error, this court held, that "an attorney-at-law is the special agent of his client, whose duties, usually, are confined to the vigilant prosecution or defense of the suitor's rights.   By virtue of his engagement as an attorney, he is not authorized to compromise the matter of controversy, to execute a release of his client's demand, or even to release the responsibility of a witness to his client, that he may be rendered competent.   When a note is placed in the hands of an attorney-at-law to collect, the only power granted to him is to receive the money, if the payor will pay it without, or to enforce its payment by suit.   He has no right to dispose of this note in payment of his own debts, or by compromise to receive goods, or horses, or any thing but cash, in discharge of the payor's responsibility.   *   *   If, then, a debtor makes an arrangement with an attorney-at-law, in the employ of the creditor, by which he pays any thing else but money, it is not on account of the confidence which has been reposed in the

attorney by the creditor, but from the reliance which the debtor himself places on him."

In the case of *Cost v. Genette*, (1 Porter, 212,) an action was brought by the creditor against the debtor, who had paid the attorney of the creditor by surrendering a note the debtor held against the attorney, in payment of the note due the creditor; and the attorney gave up the note of the creditor to the debtor. The action was *assumpsit*. The court below gave judgment against the plaintiff; but this court reversed the same, holding that "an attorney was the especial agent of his client to receive the money upon the note committed to him, and that the act done by him was in violation of the authority granted, and so not binding on the principal."

The case of *West, Oliver & Co. v. Ball & Crommelin*, (12 Ala. 340,) was an action of *assumpsit*, to recover of the defendants the difference in value between a sum of money collected by them as attorneys-at-law of the plaintiffs, in bills of the Bank of the State of Alabama and its branches, and specie funds. The court say, COLLIER, C. J., delivering the opinion, that the attorneys had no right "to accept any thing in discharge of the liability but cash"; and further, "that a paper medium of currency is not money. And if an attorney collect bank-bills, in lieu of specie, without authority, he is responsible, as for a failure to collect. We think it clear that an attorney-at-law, in virtue of his general powers, has no authority to receive depreciated bank paper in payment of a debt placed in his hands for collection; and if he collects it in such funds, his client is not bound to accept it in satisfaction. The debtor can not discharge himself by a payment in any thing else than gold and silver, without the consent of his creditor; nor does the mandate of a *fieri facias* require of the officer to make of the defendant's estate any thing else than gold and silver. And if he accepts bank-bills, which are selling at a discount, neither himself, nor the attorney of the plaintiff, can compel the latter to receive them as money." The court further held, that no usage of attorneys could vary the rule, and said: "It has been repeatedly decided, that the usage of no class of men can be supported in opposition to the established principles of law."

Chapman, Lyon & Noyes v. Cowles.

The case of *Cook & Lamkin v. Bloodgood*, (7 Ala. 684,) indicates that the plaintiff, where money has not been paid, may elect to proceed against the sheriff, the attorney, or the defendant, as the facts may authorize.

We have thus fully examined and cited the authorities, as the counsel for the appellee confidently rely on the case of *Haynes v. Wheat*, (9 Ala. 239,) as decisive of this case. Whatever may be the rule as to the liability of defendants in execution, whenever it is satisfied by an entry of the sheriff or clerk, the above authorities clearly show, that a payment to an attorney by the debtor, of any thing *not equivalent* to gold and silver, in satisfaction of a debt, without authority from the creditor, does not relieve the debtor from liability to the creditor. They also show that a creditor *may elect* to proceed against his attorneys, and hold them liable for gold and silver; and they can not discharge themselves from the payment of gold and silver, or reduce the amount of the recovery, by showing that they received depreciated currency, or only a part of the amount of the judgment, when they have receipted it in full.

The facts of this case do not show that the attorneys had any authority to receive the currency they did in satisfaction of the demand, or that their clients have ever ratified their act.—*West, Oliver & Co. v. Ball & Crommelin, supra.*

The last case cited is to be taken as authority upon the meaning of the words *"money"* and *"cash,"* used in the other cases cited from the reports of this State; and we think it is decisive of this case, and fully sustained by the cases herein cited from the reports of our sister States.

Upon the evidence, the motion of the plaintiffs should have been granted.

The judgment of the court below must be reversed, and the cause remanded.