# Ferguson *et al.* v. Morris.

### Bill in Equity to Enjoin Action of Ejectment.

1. *Confederate treasury notes; executor or administrator might receive in payment of debts.*—Executors or administrators and other trustees who were clothed with the legal title to the claims due the estates which they represented, might receive Confederate treasury notes in payment of them, and in the absence of fraud, or collusion, the debts were extinguished.

2. *Same; agent or attorney could not receive.*—But an agent or attorney has only a special authority, and is in no sense the owner of the debt, and cannot

[Ferguson et al. v. Morris.]

receive in payment of it anything but money, or currency which passed at par, and was considered and treated as money; and the fact that nothing but depreciated currency was in circulation, cannot enlarge his authority in this respect.

3. *Foreign administrators; cannot receive payment of debts until letters recorded in Alabama.* - Foreign administrators, until they have caused their letters duly authenticated, to be recorded where they seek to reduce to possession a chose in action, have no authority to receive payment of it, and payment to them before their letters are recorded is no protection against the claims of creditors or of a domestic administrator.

4. *Principal; cannot authorize agent to do that which he cannot do himself.*—A principal cannot confer on an agent authority to do that, in his behalf, which he himself could not do if he were personally present and acting for himself.

5. *Vendee paying debts of vendor's estate in depreciated currency entitled to credit.* When, on a bill filed to enjoin an action of ejectment by the heirs of a vendor against a sub-vendee who holds under an executory contract, it appears that such vendee had used depreciated currency collected by him as agent of the administrators of the vendor's estate, in paying the debts of such estates, he will be credited with such payments, and has an equity to redeem on payment of the purchase-money.

APPEAL from Talladega Chancery Court.

Heard before Hon. N. S. GRAHAM.

On the 4th day of March, 1871, W. A. Morris filed this bill against Sarah B. Ferguson and others, to enjoin an action of ejectment instituted by them, as the heirs at law of Jos. W. Ferguson, deceased, for the recovery of certain lands described in the bill. About the first of October, 1860, Jos. W. Ferguson, the father of appellants, sold six hundred acres of land in Talladega county to Ben. F. Sawyer for $5,100. A note made by B. F. and Elbert H. Sawyer, due October 1, 1861, with interest from date, was taken for one-half the purchase-money, and the other half was paid in cash. About the 20th of February, 1861, Jos. W. Ferguson and wife executed a deed, conveying said land to B. F. Sawyer, and placed it in the hands of W. D. Caldwell, with instructions to deliver it to Sawyer, on payment of the purchase-money note which was placed in his hands at the time for collection. He also delivered to Caldwell at the same time another note, on Sawyer for $114, and other notes on various persons instructing him to collect them, and to pay out of such collections as he might make, certain debts to Dr. Gorman and others, and to pay over to him any balance left after such payment. Ferguson removed to Texas, where he died in November, 1861. In December, 1861, Jas. and Isaac Ferguson were appointed administrators of the estate of Jos. W. Ferguson, by a court in Texas. On the 4th of February, the administrators wrote to Caldwell, authorizing him to collect and close up, and receive all moneys due the estate of Jos. W. Ferguson. On May 19, 1862, Caldwell being about to enter the army, placed all the notes which he had received from Ferguson, and also the deed to Sawyer, in the hands of

appellee, Morris, giving him the same instructions in regard to collecting them, and the disposition of the money, as he had received from Ferguson, and afterwards from the administrators of his estate. In June, 1862, Sawyer sold to Morris four hundred and fifty acres of the land which he had purchased from Ferguson for $5,100, and Morris gave his note for that amount to Sawyer. This note was payable January 1, 1863. Sawyer also gave Morris a bond for title upon payment of the purchase-money. On January 3, 1863, John Sawyer, as agent of B. F. Sawyer, called on Morris, laid on the table a deed made by Benjamin F. Sawyer and wife to Wm. A. Morris, and the note made by Morris to Benjamin F. Sawyer for $5,100 for the land, and said that he had come to collect the note, deliver the deed, take up Benjamin F. Sawyer's bond, and deliver the possession of the land to Morris. Thereupon Morris laid on the table a package containing $5,100 in Confederate money and B. F. Sawyer's bond, and said, "there is your money, count it." John Sawyer picked up the package of money, and ran his hand over the end of it once or twice, and then looked into Morris's face, and said—Morris, have you got Ben Sawyer's note to Wm. Ferguson in your possession?' To which Morris replied that these notes were in his desk. John Sawyer then said to Morris that Ben Sawyer had instructed him to get up those notes if Morris had them; and further said to Morris, " what is the use of my counting the money, and then having to count it right back to you?" Then Morris produced the two notes of B. F. Sawyer to J. W. Ferguson, one for $2,500 and one for $114 or $115. Morris counted the interest on the large note. Sawyer counted the interest on the small note. The amount of the two notes were added together and deducted from the $5,100, and the balance due on this note was then counted out of the package of Confederate money by John Sawyer. The two notes on B. F. Sawyer in favor of J. W. Ferguson, were handed to John Sawyer by Morris, with B. F. Sawyer's bond for title, and John Sawyer delivered to Morris the note in favor of B. F. Sawyer on Morris for $5,100, B. F. Sawyer's deed to Morris, and delivered to Morris the possession of the land. Morris collected some other Confederate money for Ferguson and for the administrators, on the other notes in his hands, and out of it paid the debts which he had been instructed to pay by Caldwell. The money for the notes of Sawyer, for the land, was never paid over to the estate of J. W. Ferguson.

On July 29, 1870, Sarah B. Ferguson, and others, brought an action of ejectment in the Circuit Court of Talladega county, against W. A. Morris, to recover the four hundred

[Ferguson et al. v. Morris.]

and fifty acres of land sold by Sawyer to said Morris. This suit was pending when the bill was filed. A temporary injunction was granted on the filing of the bill.

The respondents moved to dismiss the bill for want of equity. The Chancellor refused this motion, and on the hearing rendered a decree perpetually enjoining the respondents from prosecuting the action of ejectment against W. A. Morris. This decree, and the refusal to dismiss the bill for want of equity, are assigned as error.

JOHN T. HEFLIN, for appellants.—Caldwell's power to collect the purchase-money note made by Sawyer ceased on the death of Ferguson, the principal, and he could not delegate it to Morris.—*Cunningham v. Johnson*, 1 Ala. 240 ; *Reynolds v. Scarbrough*, 12 Ala. 252. The claim of the appellee to the land in controversy has no foundation in justice. He undertook the collection of a note which was a lien on the land, of which he had notice, and soon afterwards purchased the land, agreeing to pay the note, which was a lien on the land. On January 3, 1863, he says that he paid for the land in Confederate money, on the note that bound the land. The appellants insist that the note was converted by being used to pay for the land. The appellee assumed incompatible duties in blending his individual interest with the trusts attaching to the position in which he was acting, which disqualified him to bind the *cestuis que trust*. He had no authority to collect a depreciated currency.—Story's Agency, § 181 and notes, § 215 ; *Ball et al. v. West, Oliver & Co.* 12 Ala. 330 ; *Chapman, Lyon & Noyes v. Cowles*, 41 Ala. 103 ; *Aicardi v. Robbins*, 41 Ala. 541 ; *Cooney v. Wade*, 4 Hump. 444 ; *Kenny v. Hazleton, Haddock & Co.* 6 Hemp. 62. The collection of solvent claims in Alabama by an agent in currency greatly depreciated and daily depreciating, when the persons to whom the money belonged were in Texas, and the blockade of the Mississippi rendered the transmission of the funds to the beneficiaries thereof impossible, was "reckless and improvident," and renders the agent liable for the loss of the funds.—*Gibbs v. Gibbs*, Phillips N. C. Rep. 471–2 ; *Emerson v. Mullett*, Phillips N. C. Equity R. 234. The purchase-money due to the estate of the appellants' father, being lost by the negligence and fraud of the appellee, when he claims the land, they may defeat his suit on the ground that his acts, wrongful in themselves, have caused the loss of the purchase-money. *Vide, Long v. Waring*, 25 Ala. 625, which is a case directly in point.

PARSONS & PARSONS, for the appellee.—The administrators

had the right to collect the debts of the estate in Confederate money, and such collections are binding on the estate.   The administrators had the same power over the choses in action of the intestate, as if they had been appointed in this State. *Broughton v. Bradley*, 34 Ala. 694.   And they had the right to sue as administrators without taking any preliminary step. *Manly v. Turnipseed*, 37 Ala. 529 ; *Bell's Adm'r v. Nichols*, 33 Ala. 679.   After the payment of J. W. Ferguson's debts, his personal property would be distributed by the Texas court. *Harrison v. Mahorner*, 14 Ala. 829.   Sawyer's note was personal property, and in legal contemplation attended the person of J. W. Ferguson, and hence was in Texas.—10 Pick. 100.   A man may do voluntarily that which the law will compel him to do.—49 Ala. 137.   The title of the administrators to the personal property was exclusive.—9 Ala. 408 ; 16 Ala. 494 ; 18 Ala. 9.   They could compel payment of the note due by Sawyer for the purchase-money of the land, and Ferguson's debtors had the right to pay him while he was living, or his representatives, or their agent, after his death.   The administrators had full power over the choses in action of the decedent—could compromise or settle them.— *Waring v. Lewis*, 53 Ala. 615.   J. W. Ferguson, who removed to Texas during the war, when Confederate currency was the only money in circulation, had instructed Caldwell to *collect* all the notes left with him, and among them was a note for the purchase-money of the land in controversy.   The administrators renewed Caldwell's agency, and gave him the same instructions, and when Caldwell turned the notes over to Morris, he gave him the same instructions.   When Morris received the Confederate money in payment of Sawyer's notes, he did no more than the administrators would have done if they had been present, and they had undoubted right to collect Confederate money.   Indeed, they could collect the notes in nothing else, and of this fact the court takes judicial knowledge.—23 Ala. 33 ; 40 Ala. 391.

BRICKELL, C. J.—The legal estate in the premises in controversy resided in Joseph W. Ferguson, the ancestor of appellants, at the time of his death.   It was not divested by the sale to Sawyer, or the bond he executed with condition to make titles on the payment of the purchase-money.   The sale, coupled with the bond, created but an equity, imperfect until the purchase-money was finally paid.   The appellee, who by his purchase and the conveyance to him, has succeeded to Sawyer's rights under his contract of purchase, and to his interest in the lands, is also subjected to his duties and liabilities.   As Sawyer could not have claimed that the

legal estate residing in the ancestor, and *eo instanti* his death, descending to the appellants, should be divested, until there was full payment of the purchase-money, according to the terms of his contract of purchase, the appellee can have no other or higher claim. The question decisive of the case, in any of its aspects, is whether there has been payment of the purchase-money, either by Sawyer, or by the appellee ; and that question can not be answered otherwise than in the negative.

If we assume that the appellee stood in the relation of agent of the administrators of the ancestor, appointed and residing at his domicil in Texas, and that they could have clothed him with authority to collect Sawyer's note for the purchase-money of the lands, he would not have been authorized to receive in payment any thing else than money, and, certainly, not his own debt. The law would have confined and limited him to a collection of the purchase-money, in that which was a legal tender for the payment of debts, or that currency which, passing at par, was considered and treated as money.— *Ward v. Smith,* 7 Wall. 447 ; *Chapman v. Cowles,* 41 Ala. 103 ; *West v. Ball,* 12 Ala. 340. Whatever may have been the usage, or custom, or necessities of business, at the place of residence of Sawyer and the appellee, though there may have been no other than a depreciated currency in circulation, fluctuating in value with the fortunes of war, thereby the authority of the appellee was not enlarged. It was not capable of modification, or change, or adaptation, to meet such events, whether the probability is that they were foreseen or unforeseen by the principals. If they required new or other authority than that which the principals had conferred, it was for them alone to determine, whether authority adapted to them should be given, or whether they would repose on the authority which had been given, awaiting results and future events.— *West v. Ball, supra ; Alley v. Rogers,* 19 Gratt. 366 ; *Evart v. Sanders,* 25 Gratt. 2 ʹ3. It is alike unreasonable and unjust to suppose that the principals, residing in Texas, to whom prompt and safe transmission of funds under the circumstances existing, when it is claimed the purchase-money due from Sawyer was paid, could have contemplated or intended to authorize its payment in a currency of such uncertain and evanescent value, as were Confederate treasury-notes. Their value was really dependent upon the immediate uses to which they could be applied. And it may, or may not, be true that if payment of them could have been made to the principals, when it is claimed they were received by the appellee, that they would have been accepted, and could have been advan-

tageously employed for the benefit of the estate of their intestate. They had not the opportunity of accepting and using them, and it is useless to speculate upon what they would have done, if it had been afforded.

We are not departing from, nor do we intend any modification of, our repeated decisions, that if debts were paid to an executor, administrator, or other trustee, clothed with the legal title to them, in Confederate treasury-notes, in the absence of fraud or collusion, the debt is extinguished. The distinction and difference, clear and marked, between that class of cases and the present, was pointed out in *Waring v. Lewis*, 53 Ala. 632. An attorney, or agent for collection, is in no sense an owner of the debt—he has but a special authority, and all who deal with him must, at their own peril, inquire into and ascertain its nature and extent. There can be no presumption that it extends beyond the reduction of the debt into money, or that which, because it circulates at par as money, has by general consent in the transaction of business, the qualities and uses of money. An executor, administrator, or other trustee, clothed with a legal title to choses in action, of which the power of disposition is an incident, is not in any sense an agent, nor as an agent is he confiᴅed and limited in authority and duty. It is his duty to collect the choses in action ; to reduce them into possession ; and he may do whatever his judgment may dictate, subject only to his liability to his *cestui que trusts* for his good faith and diligence.

But it was not competent for the administrators appointed in Texas, deriving authority only from letters of administration there granted, by the mere force of such letters, to collect or receive the purchase-money of the lands due from Sawyer. Until they had caused the record of their letters, duly authenticated, to be recorded in the probate court of the county in which they sought to reduce to possession the choses in action of the intestate, and given bond as required by the statute, they were without authority to receive payment of such choses in action ; and a payment to them would have been unavailing against the claim of a domestic administrator, or of creditors, or next of kin.—Code of 1876, §§ 2637-40 ; *Hatchett v. Berney, MSS.* A principal can not confer authority on an agent to do that in his behalf which he has not the ability to do for himself, if personally present and acting. Beside, it is clear, that the appellee was not the agent of the foreign administrators—from them he derived no authority, nor had they any voice in his selection. Whatever of authority he exercised, was derived from the delegation of Caldwell, who had himself a bare power or authority,

[Lehman et al. v. Meyer et al.]

incapable of delegation without the consent of his principals. Story on Agency, § 13 ; *Johnson v. Cunningham,* 1 Ala. 249 ; *Couthway v. Bergham,* 25 Ala. 393 ; *Hitchcock v. McGehee,* 7 Port. 556. Without dwelling now upon other facts in the case, which seem to indicate that Sawyer's debt was paid only by an extinguishment *pro tanto* of the debt due to him from the appellee, and which it would not be insisted could operate as a payment, entitling the appellee to a divestiture of the legal estate residing in the appellants, for the reasons stated, we must pronounce that debt unpaid, and that the appellee's claim to relief can not be supported.

So far as the appellee paid debts of the intestate, if he had not other funds which were, or ought to have been, appropriated to that purpose, he is entitled to a credit for them in the computation of the debt of Sawyer, and has an equity to redeem on paying that debt. By the amendment of the bill, the equity may be asserted, and we remand the cause, that he may, if he so elects, have the opportunity of amendment.

Reversed and remanded.