KIRK *vs* GLOVER.

1. An attorney, to whom a claim is given for collection, and on which he obtains judgment, has no right to take a bond, in satisfaction thereof, without the consent of his client.

2. Where an attorney takes, in satisfaction of a judgment, obtained by him for a client, *a bond*, which he afterwards transfers to his own use,—in trover against the assignee by the client, evidence is admissible, to show a ratification of the act of the attorney in taking the bond, by the client, after the transfer of the bond: and the fact of the ratification of the *transfer* of the bond in such a case, is one for a jury to determine, from all the circumstances of the particular case.

In error to the Circuit Court of Marengo.

Jesse L. Kirk brought an action of trover against Allen Glover, for the recovery of the value of a sealed note; to which action the defendant plead the general issue; and a verdict and judgment were rendered in favor of the defendant. To reverse this judgment, the defendant having filed exceptions, took a writ of error.

The writing obligatory, for the recovery of which the action was brought, was in the following words, to-wit:

" On or before the twenty-seventh day of March, one thousand eight hundred and twenty-eight, we or either of us promise to pay Jesse L. Kirk or bearer, the sum of eight hundred and thirty-five dollars and fifty-three cents, with interest from the date, witness our hands and seals this 27th March 1826—David Hogan (Seal) Thomas Adams (Seal) David Curry (Seal) William Adams (Seal.)"

On the trial of the cause in the Court below, it was proved that Kirk, the plaintiff, recovered a judgment against one David Hogan, in Marengo Circuit Court, on the twenty-seventh of March, eighteen hundred and twenty-six, for the sum of eight hundred and thirty-five dollars and fifty-three cents; that a short time thereafter, John W. Wilson, the attorney for the plaintiff, who had prosecuted and recovered said judgment, received from said Hogan and three securities, the note of which the above is a copy, which the makers of said note stated they gave him as the agent and attorney of said Kirk, (he being the attorney of record in said cause,) in payment of said judgment; and the sheriff on the execution issued on said judgment in favor of Kirk, made the following return :

" Received in office, the 5th May, 1826, the principal and interest of this execution : satisfied by the defendant to John W. Wilson, the plaintiff's attorney, as informed by said attorney; December, 1826.

"B. BARTON, Sheriff."

It further appeared in proof, that on the ninth of August, eighteen hundred and twenty-six, the said John W. Wilson called on the defendant, one of the firm of Glover & Gaines, and offered to sell said note.

The defendant at first objected to the purchase of the note; but upon Wilson's urging him to do so, and stating that he wished to raise some money to pay into Bank, and upon Wilson's further stating that he had purchased the note of Kirk, and paid him for it, a contract was entered into between Wilson and the defendant, by which Wilson sold and the defendant purchased, the note in question, at a discount of twenty-five per cent. and the interest, and paid therefor two or three hundred dollars in money, and the balance in goods, and in a debt previously contracted by, and due from, Wilson to the firm of Glover & Gaines; and thereupon the said Wilson endorsed the note on the back thereof, to Glover & Gaines, in the words, following, to-wit:

"I endorse the within to Glover & Gaines, for value, this 9th August, 1826.

(Signed,)          "JOHN W. WILSON."

The attorney, who was the witness who proved said sale, deposed that he had received the note as the plaintiff's attorney, but had sold it without his authority. The counsel of the plaintiff asked the said witness, Wilson, if the note had been taken by him of Hogan, with the authority of Kirk, the plaintiff. He said, whatever authority Kirk had given him in relation to the taking of the note in satisfaction of the judgment against Hogan, was contained in a letter or letters received by him from Kirk; that Kirk lived in Tennessee, and was not present when the note was taken, and that he had not seen Kirk from the time he received the claim in Kirk's favor, against Hogan, till after the note sued for in this case, had been taken and disposed of by him.

The absence of the letters not being accounted for, the defendant objected to such proof of authority or assent, unless the letters were produced; which objection was sustained by the Court.

The plaintiff then offered to prove by the witness, that afterwards, when the plaintiff was in this State, in April, eighteen hundred and twenty-eight, he did verbally assent to the act of the attorney in receiving the note from Hogan. But inasmuch as the said last mentioned verbal recognition of the act of taking said note, was after said note was transferred to the defendant in this action, the Court ruled that it was not proper evidence, and could not be received, on the ground that it was irrelevant.

It further appeared in proof that on the twenty-fourth of April, eighteen hundred and twenty-eight, the defendant and his co-partner, Gaines, commenced suit on said note against Hogan and the securities, in Marengo Circuit Court, in the name of Jesse L. Kirk, for the use of Glover & Gaines, and that at April term, eighteen hundred and twenty-nine, they recovered judgment on it for the sum of one thousand and fifty-seven dollars twenty-two cents; on which execution issued: that on the third day of November, eighteen hundred and twenty-nine, the plaintiff, Kirk, by John Rains his attorney, claimed and demanded of the sheriff the proceeds of the said judgment in favor of Jesse L. Kirk, for the use of Glover & Gaines against David Hogan and others, of which said claim and demand, the sheriff on the said third day of November, eighteen hundred and twenty-nine, gave the defendant notice; whereupon the defendant, at the request of the said sheriff, gave him a

bond of indemnity, and then received from him the proceeds of said judgment.

It was further in proof, that soon after the note in question was transferred by Wilson to Glover & Gaines, the defendant applied to the makers of the note, and requested them to take it up, and give a new one payable to Glover & Gaines, which the makers of the note refused, unless a longer time for payment was given. The defendant said he wished a new note, fearing there might be some difficulty, but refused to extend the time of payment, and no new note was given.

The plaintiff produced to the Court, from the execution docket of Marengo County, several judgments against the said attorney, Wilson, where executions were returned " *nulla bona,*" amounting, in all, to about three hundred and seventy-eight dollars and seventy-five cents, to shew that Wilson was insolvent both before and after the transfer of said note.

The said Wilson stated he was much in debt; but said, on a cross-examination, that he had, at the time, and continued to own, till late in the year 1827, negroes, worth eight or nine hundred dollars, which were liable to his debts; and was, at the time, in possession of a profitable practice as a lawyer, and that he sold said negroes, in 1827, at private sale.

The defendant offered in evidence, and produced the records of the Circuit Court of Marengo County, shewing that on the twenty-first May, 1828, Kirk commenced, in said Court, a suit against Wilson, and his co-partner in the practice of law, to recover the amount collected by said Wilson, on his judgment against Hogan; which suit, it was proved, was to re-

cover the amount of the judgment against Hogan, for which the note in question was taken.

The plaintiff also produced in evidence the record and proceedings of a suit, brought by said Kirk, against Wilson, on the twenty-third day of May, 1828, in the County Court of Marengo, which, it was proved, was to recover the amount collected by Wilson, on the said judgment, in favor of Kirk against Hogan.

The foregoing was all the evidence in the case.— The plaintiff requested the Court to instruct the jury, that the transfer of the note, by the attorney to the defendant, he having no authority from Kirk to do so, vested no title in the defendant to it; and that the plaintiff could recover in this action. Whereupon, the Court instructed the jury, that if the note sued upon in this case, was taken by Wilson, under the authority of Kirk, and sold by him, without Kirk's authority, that Kirk had a right to recover; and that, if Wilson had taken the note of Hogan, in satisfaction of Kirk's judgment against him, without Kirk's authority, and Kirk had acquiesced in, and adopted the act of Wilson, before the note was disposed of, by him, the plaintiff was, in that case, entitled to recover.

The plaintiff then requested the Court to instruct the jury, that if Kirk did not know of the taking of said note for his benefit, until after it was transferred, that his assent, as soon as it came to his knowledge, was sufficient, though after the transfer of it; and further, that no notice of assent of the transfer was necessary to be given by Kirk to the defendant,

5 s. & p.           44

within a reasonable time, as contended for, by the defendant; but that, if the plaintiff had title to the note, and the defendant converted it, that the plaintiff was entitled to his action at any time within six years after the conversion, against the defendant: which instructions the Court declined giving; but instructed the jury, that if they believed the acts of Wilson, both in taking and disposing of the note, were alike unauthorised, and that Kirk had not adopted or assented to the act of taking the note, either expressly or by implication, before the note was passed to the defendant, though he may not have known of the existance of the note, then, and in that event, the plaintiff was not entitled to recover. The Court also remarked to the jury, that if they believed the plaintiff, after having notice of the transfer of the note, delayed, for an unreasonable time to assert his right, or give notice to the defendant of his dissent to the transfer of the note by Wilson to him, they were authorised to take that circumstance into consideration, as well as the suits commenced against Wilson, and might, from these facts, and the delay to bring the suit, if they thought it a reasonable conclusion, infer an assent to, or acquiescence in the transfer of the note by his attorney to the defendant.

The plaintiff further requested the Court to instruct the jury, that a note under seal was not transferable by delivery, though made payable to the bearer; and that, therefore, by said transfer, the defendant acquired no title to the said note, which he could assert in a Court of law, against the plaintiff: in relation to which the Court instructed the jury, that the

bearer of an instrument of this description, could not, according to the prevailing doctrine, sustain an action upon it, in his own name, as bearer; yet, if he was the rightful holder, he could sue in the name of the obligee, for his own use, and a Court of law would protect his equitable interest against any unjust or arbitrary interference from the obligee or others.

*Stewart*, for the plaintiff in error—
*Vandegraaffe*, contra.

THORNTON, J.—This was an action of trover, brought by the plaintiff below, to recover the amount of a bond, which the plaintiff alleged to have been his property, and to have been wrongfully converted by the defendant, to his use.

A bill of exceptions was taken, during the progress of the trial, which contains the matters assigned for error in this Court. It appears, by said bill of exceptions, that the plaintiff recovered a judgment on the twenty-seventh March, one thousand eight hundred and twenty-six, in the Circuit Court of Marengo County, against one David Hogan, for the sum of eight hundred and thirty-five dollars and fifty-three cents; that a short time thereafter, one John W. Wilson, who, as the attorney for the said plaintiff, had prosecuted, and obtained said judgment, took from the said Hogan, in discharge of the said judgment, a writing obligatory, executed by the said Hogan, with several other persons as securities, and made payable on or before the twenty-seventh of March, one thousand eight hundred and twenty-

eight, to the plaintiff or "bearer," for the amount of the said judgment: whereupon, by the order of the said attorney, the sheriff returned the execution on the judgment aforesaid, satisfied.

Though this negotiation was made by Wilson, the attorney of the plaintiff; yet, there is no proof, that it was authorised by the plaintiff at the time.

On the ninth day of August, one thousand eight hundred and twenty-six, the said Wilson sold and transferred the said bond, by his own indorsement thereon, to the defendant, alleging to him, that he had bought the bond of the payee.

The indorsement by Wilson, was to "Glover and Gaines;" and suit was brought in the Marengo Circuit Court, on the twenty-fourth of April, one thousand eight hundred twenty-eight, in the name of the plaintiff, to their use upon said bond, against Hogan & Co. and judgment recovered thereon in April, one thousand eight hundred and twenty-nine. Execution issued thereon, and whilst the money levied was in the hands of the sheriff, it was claimed and demanded for the plaintiff.

There is no proof in the record, that at any time prior to this demand, any notice had been given to the defendant, of the claim of the plaintiff to the said bond or its proceeds. Nor is there any proof, that prior to that time, he knew of the transfer by Wilson.

In May, one thousand eight hundred and twenty-eight, the plaintiff moved agaisnt the said Wilson, in the Marengo Circuit Court, for the amount of the judgment, which it appeared by the return of the sheriff, had been paid to him; and instituted suit also, in

the County Court of Marengo, by writ, returnable to the July Term thereof, one thousand eight hundred and twenty-eight, for the same cause; both of which proceedings were dismissed.

All the assignments of error relate to certain directions given, and refused to the jury, except one, which was the refusal of the Court to permit a witness to testify to a verbal ratification by the plaintiff, of the contract, by which Wilson, his attorney, had taken the bond sued for from Hogan, as said ratification was made by him, subsequent to the transfer of the said bond, by Wilson to the defendant.

There can be no doubt that Wilson transcended the bounds of his authority, as attorney, when he took this bond from Hogan in satisfaction of the judgment, which he had obtained for the plaintiff.

The authorities to this point are numerous, and are referred to by the Court, in the case of *Gullet and Lewis*, where the doctrine is settled, that the attorney is only a special agent to collect, by suit, or without it, the money of his client. But, it is equally clear, that it was competent to Kirk, to ratify and confirm this negotiation of his attorney; nor can we see any principle, which would restrict his power to ratify, and confine it to the time whilst the bond was in the custody of Wilson.

There is no necessary connection between these two acts—the taking of this bond in discharge of the judgment against Hogan, and the passing it off, by Wilson, in payment of his own debt, to the defendant.

The principal, I admit, can not ratify one part of a contract made by his agent, and disannul another

part of the same contract. It is a whole, and as such must be treated. But, there is surely no obligation, on the principal, to ratify *all* the various contracts of his agent, because he may chose to ratify *one.*

There is no proof, that he knew of this contract, by which his debtor had been attempted to be discharged from the judgment, until the time at which it was proposed to prove that he ratified it; and no delay ought to forfeit a right of which the party had no knowledge. He can not be said to have waived that which he is not proven to have known.

The relevancy of this proof, which was proposed and refused, is direct to the main question in the action. Without a prior authority granted to Wilson, to settle the judgment in the way he did it—or, what is equivalent to such authority, the property in the bond, for whose conversion the suit was instituted against the defendant, was not in the plaintiff. No prior authority being established, a subsequent confirmation was essential to the maintenance of the action, the effect of which I consider to be equal to a prior authority. *Amnis ratihabitatio retro-trahitur, et mandato priori æquiparatur.*

For the refusal to admit this proposed proof, I should feel bound to reverse the judgment; but, as the cause will be remanded, for further trial, we think it our duty to express an opinion upon other points involved in its decision.

If a ratification had been proven, as was proposed, then the bond sued for, from its execution, was the property of Kirk—and, being in the hands of his agent, Wilson, it could not be transferred by him, to

any, however fair a purchaser, so as to destroy Kirk's right, without his consent to such transfer.— This follows, as a consequence, from the law of agency, which applies as well to this bond, as to any other species of property, belonging to one man, and in the hands of another. It would constitute an exception, if it were negotiable paper, and endorsed; but, otherwise the agent could not transfer it, to the injury of the principal.[a]

[a] 3Kent'sC. 52; 5Johns Ch. R. 56, Paley 181, and cases cited.

The circumstance. that the bond, in this case, is made payable to the plaintiff, " or bearer," makes no difference, under the authority of the case of *Sayer and Lucas.*[b] The transfer of the bond to the defendant, by Wilson, like the original taking of it, was

[b] 2Stewart, 259.

in violation of his authority; but, like that, was an act, which it was competent to Kirk, to ratify and confirm. Whether or not Kirk did ratify this last contract of sale to Glover, is a fact for the determination of the jury, and was properly left to them, to decide, from all the circumstances of the case.

If the first contract were affirmed, it does not follow of course, that the last was repudiated; and Glover is entitled to the benefit of it, if he can establish its ratification.

The acts allowed to be considered by the jury, as grounds of inference, upon this head, we do not think should have been excluded from them. The suits by Kirk, against his attorney—his delay in suing Glover for the bond—if he knew all the while of the transfer having been made, were circumstances properly left to the jury, to deduce from them or not, as would seem most reasonable. The fact of ratification or not—and whether he knew or not, of the existence

of the transfer, at any time prior to his demand of the money, of the sheriff, was a fact for their determination; which last it would be necessary to establish, before any inference against him, could be drawn from the former facts. Both his knowledge of the last transfer, and his assent to it, may be proven by circumstantial evidence.

There is a case in 2d Mass. Reports, 106, which in many of its features, resembles this, and which establishes the view here taken of the rights and duties of the parties interested in this last act of Wilson, or his disposition of the bond sued on, to the defendant.

One Cushman, holding a note for eighty-nine dollars, against one Wellington, delivered the same to one Smith, to collect for his use. This note Smith sold to Locker, for cattle. Locker presented it to Wellington, and received the money. Smith then became insolvent, and afterwards seeing Cushman, who was acquainted with all these facts, the latter received Smith's note, for the amount of Wellington's. This last note not being paid, Cushman brought an action against Locker, for money had and received, to the plaintiff's use.

The Supreme Court of Massachusetts decided, that he could not recover. They said—"As between these parties, Smith was Cushman's agent to receive the money, due on the note. He received from Locker the value of the money in cattle, and delivered him the note. Smith appears to have exceeded his authority in receiving the cattle in payment, and Cushman might, if he pleased have disaffimed the contract of his agent. But, after full notice of the

transaction, and after Smith's failure, he considered him as his debtor, for the amount of Wellington's note, and took Smith's note for the payment.    This conduct of Cushman, we are all satisfied is a ratification of the transaction of his agent, with Locker."

In the case just cited, the fact of taking the note of Smith, after knowledge of the facts, constituted a ratification.    The doing of other acts might have amounted to the same thing.

Assent to or ratification of an unauthorised act of an agent, was, by Chancellor *Kent*, in the case of *Armstrong & Barnwell* vs *Gilchrist*,[a] presumed, from the fact that propositions from the debtor were communicated by the agent, to the principal, and he made no objection to them.

[a] 2 Johns. C. in E. 424.

It is desirable, on all hands, in reversing a cause, that the whole law of the case should be settled by this Court, " *ut sit finis litium;*" and we have accordingly endeavored, without a tedious specification, to discuss all the principles involved in the case, as now presented.

Let the cause be remanded, for further proceedings, in the Court below.

SAFFOLD, J., not sitting, in the trial of this cause.