142 So. 832

### BERK v. STATE ex rel. THOMPSON.

### 6 Div. 116.

Supreme Court of Alabama.

May 26, 1932.

Rehearing Denied June 25, 1932.

W. Emmett Perry, of Birmingham, for appellant.

Marvin Woodall, David J. Davis, W. B. Harrison, Borden Burr, and John S. Stone, all of Birmingham, Harwood & McQueen, of Tuscaloosa, and Henry F. Reese, of Selma, for appellee.

**326**

THOMAS, J.

The petition is in the nature of a quo warranto directed against one alleged to have and who is proposing to continue practicing law without the license required to lawfully engage in that profession.

The appeal is from a judgment rendered wherein the defendant was adjudged guilty of practicing law without a license, as required by law, and was prohibited from continuing the practice of law until he becomes regularly licensed to practice as required by law.

The petition was filed in the name of the state of Alabama on the relation of R. Dupont Thompson and by R. Dupont Thompson, questioning the right of the defendant to engage in the profession of the practice of law, which requires a license, in Birmingham, Jefferson county, Ala., without first being so licensed. The relator alleges therein that he was a duly licensed practicing attorney, residing and practicing law in Birmingham, Jefferson county, Ala., and at that time was the president of the Birmingham Bar Association; that the defendant was engaged in the business of conducting a commercial collecting agency as a vocation, within the city of Birmingham, in which vocation he was holding himself out to the public as being ready, able, and willing, for a consideration paid or to be paid him, to represent out of court any one in the adjustment, collection, or compromise of any defaulted, controverted, or disputed account, claim, or demand, which such person might have against any one else, with neither of whom defendant was in privity or in the relation of employer or employee in the ordinary sense, and that when in defendant's judgment expedient to turn over to his attorney to prosecute in court any such claim or demand, and that the relator habitually did so turn over such claim or demand to his attorney for prosecution in court, when in his judgment it was necessary; and that the defendant had expressed his intention to continue handling such business in the future in the same manner.

It is further averred that in and about carrying on such business in Birmingham, before the institution of this suit on September 24, 1931, defendant, "by solicitation," secured from a person in the city of Birmingham with whom there was no relationship between them of employer or employee in the ordinary sense a defaulted, disputed, or controverted account, claim, or demand against a third person, which claim or demand was evidenced by a promissory note payable in a certain

sum, and which note contained the following provision as a part thereof: "The parties to this instrument * * * hereby severally agree to pay all costs of collecting or securing or attempting to collect or secure this note, including a reasonable attorney's fee."

It is further averred that thereafter, and before the institution of this suit, the respondent, in handling said note for collection, did the following things: He wrote a letter to the maker of the note, demanding payment of the same together with a collection fee as provided in the note, claiming $5 as such collection fee, and, when said letter was not answered. by the maker of the note, the defendant mailed to the maker a notice which was received by him and was in matter and form made a part of the petition, together with the indorsement on the back of said notice, which appears to be in nature, form, and substance a threat on the part of the defendant to institute suit, and in' aid thereof a garnishment forthwith against the maker of the note in the municipal court of Birmingham, wherein the employer of the maker of said note was to be made garnishee for the collection of said note by judicial proceedings, both as to principal, collection fee, and court costs. This formal notice is headed: "Final notice before garnishment."

It is alleged that thereupon the maker of said note called at the office of the defendant and conferred with him relative to the matter; disputed the correctness of the amount of said instrument, and that defendant demanded payment of said note in full of said maker, who then and there paid the defendant as such representative a sum less than the principal of said note in compromise of said claim, and, in addition thereto, paid him the further "sum of Five Dollars ($5.00) as his fee for services in compromising and collecting said note" in full settlement of said amount claimed; that defendant retained the $5 so collected as his fee, and remitted the principal amount collected of $14.66 to the owner or client in full settlement of his undertaking to collect said note.

It is then further averred that: "The defendant was operating at that time a general commercial collecting agency and solicited and made the adjustment and collection and remittance as above set out; that the defendant during said time was not, is not, and has not been regularly licensed to practice law in the State of Alabama. Said defendant is at the present time handling notes in like manner as above set forth and admits that it is his intention to continue handling notes in that same manner in the future."

The defendant demurred to the petition filed, "and to each and every paragraph thereof separately and severally," assigning many grounds on which submission was had; as that the act in question was unconstitutional; did not show facts that constituted the practice of law; and that "said Act of the Legislature of Alabama entitled: 'An. act to further regulate the practice of law; providing who may practice law; defining the practice of law; requiring a license for practicing law; and providing penalties for violations of the Act,' upon which, this petition and writ of quo warranto are based, reenacts an existing law, namely, section 6248 of the Code of Alabama, 1923, and proceeds in an attempt to define the practice of law, and set out therein certain definitions, including other well known and recognized businesses which have not heretofore constituted the practice of law, and nothing is contained in the title to said act which would in anywise notify the persons to be affected thereby, namely, this defendant and others who are pursuing the business of an ordinary commercial collecting agency."

The trial court ordered and adjudged that said demurrer be overruled, and respondent refuse to plead further, whereupon the court ordered and adjudged "that the respondent, Bernard Berk, is now, has been, or proposes to continue unlawfully intruding into the profession of the practice of law (a profession requiring a license) in Birmingham, Jefferson County, Alabama. It is further ordered and adjudged by the court that the respondent, Bernard Berk, be and he is hereby excluded from said profession and prohibited from practicing law in Jefferson County, Alabama, until he becomes regularly' licensed (as required by law) to practice law."

Under the facts alleged in the petition relative to the alleged business of defendant-appellant, was he, had he been, and. did he propose "to practice law" unlawfully without having the required license to engage in such practice? Otherwise stated, the first question for decision is: Did the averred acts constitute "the practicing of law" per se?

The act regulating and defining the practice of law, approved July 20, 1931, provides in part as follows:

"Section 1. Only such persons as are regularly licensed have authority to practice law.

"Section 2. For the purposes of this Act, the practice of law is defined as follows: Whoever, (a) In a representative capacity appears as an advocate or draws papers, pleadings or documents, or performs any act in connection with proceedings pending or prospective before a court or a justice of the peace, or a body, board, committee, commission or officer constituted by law or having authority to take evidence in or settle or determine controversies in the exercise of the judicial power of the State or subdivision thereof; or, (b) For a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, advises or counsels anoth-

er as to secular law, or draws or procures or assists in the drawing of a paper, document or instrument affecting or relating to secular rights; or, (c) For a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, does any act in a representative capacity in behalf of another tending to obtain or secure for such other the prevention or the redress of a wrong or the enforcement or establishment of a right; or, (d) As a vocation, enforces, secures, settles, adjusts or compromises defaulted, controverted or disputed accounts, claims or demands between persons with neither of whom he is in privity or in the relation of employer and employee in the ordinary sense; is Practicing Law. Nothing in this section shall be construed to prohibit any person, firm or corporation from attending to and caring for his or its own business, claims or demands; nor from preparing abstracts of title, certifying, guaranteeing or insuring titles to property, real or personal, or an interest therein, or a lien or encumbrance thereon." Gen. Acts 1931, p. 606.

This prescription or legislative definition of the words "practicing law" is specific, its own interpreter, and unambiguous.

We are not without decisions in this jurisdiction that shed light upon the question, or shorthand rendition of facts and definition thereof that are pertinent.

It was decided in Gullett v. Lewis, 3 Stew. 23, 27, that: "An attorney at law is the special agent of his client, whose duties, usually are confined to the vigilant prosecution or defence of the suitor's rights. By virtue of his engagement as an attorney, he is not authorized to compromise the matter of controversy, to execute a release of his client's demand, or even to release the responsibility of a witness to his client, that he may be rendered competent. When a note is placed in the hands of an attorney at law to collect, the only power granted to him is to receive the money if the payor will pay it without, or to enforce its payment by suit."

Analogy is contained in Kirk v. Glover, 5 Stew. & P. 340, in the definition and declaration of the doctrine of special agency in an attorney to collect in money, his client's suit prosecuted to judgment; or to collect it without suit; or to collect the claim the basis of a suit out of court, as was the case in Cook & Lamkin v. Bloodgood, 7 Ala. 683.

The case of Chapman, Lyon & Noyes v. Cowles, 41 Ala. 103, 108, 109, 91 Am. Dec. 508, contains authorities collected and reviewed as to the general authority of an attorney in the collection of a claim of his client, saying, among other things: "In Clark & Co. v. Kingsland (1 Smedes & M. [Miss.] 248), the court say: 'It is the business of an attorney to collect the money on claims placed in his hands for collection, and his authority as an attorney extends no further.' * * * It is also held, in the case of McCarver v. Nealey, (1 G. Greene [Iowa] 360) 'that an attorney has no right to receive any thing but money in satisfaction of a demand placed in his hands for collection, unless especially authorized to do so by his client,'" and cites with approval Kirk v. Glover, 5 Stew. & P. 340; Craig v. Ely, 5 Stew. & P. 354; and Gullett v. Lewis, 3 Stew. 23.

This well-established rule of the general power and agency of an attorney to collect in money for his clients in and out of court, with and without judgment or other legal process, as declared and defined in the last cited authority, was approved in Robinson v. Murphy, 69 Ala. 543, 548, where Mr. Chief Justice Brickell declared: "All who deal with an attorney or other agent must ascertain the extent of his authority. If they do not inquire, they can claim no protection because they indulged suppositions or conjectures, reasonable or unreasonable, that the agent had the authority he was exercising. Gullett v. Lewis, 3 Stew. 23. The law defined the extent of the general power of the attorney, and is presumed to be known of all men, more than fifty years ago. In the case of Gullett v. Lewis, supra, the power of an attorney at law was defined, this court saying: He 'is the special agent of his client, whose duties usually are confined to the vigilant prosecution or defense of the suitor's rights. By virtue of his engagement as an attorney, he is not authorized to compromise the matter of controversy, to execute a release of his client's demand, or even to release the responsibility of a witness to his client, that he may be rendered competent.' The compromise of which the court was speaking, was not an adjustment of pending litigation, but the composition of an admitted debt. The authority of this case has never been disputed, and it has been often cited with approbation, as defining accurately the general power of an attorney. West v. Ball, 12 Ala. 340; Chapman v. Cowles, 41 Ala. 103, 91 Am. Dec. 508. Whoever has dealt, or may in this State deal with an attorney, can have no right to rely on his exercise of any other power, unless it is specially conferred. Whether it has been specially conferred, they must, at their own peril, ascertain. The acceptance by the attorney of a less sum than was due upon the judgment did not operate its satisfaction; and the transfer or assignment of the judgment was in excess of his authority." See, also, Craft v. Standard Acc. Ins. Co., 220 Ala. 6, 123 So. 271; 66 A. L. R. 108, 112; Senn v. Joseph, 106 Ala. 454, 17 So. 543; Gunn v. Clendenin, 68 Ala. 294; Bush v. Bumgardner, 212 Ala. 456, 102 So. 629; Macdonald v. State, 143 Ala. 101, 39 So. 257; White v. Ward, 157 Ala. 345, 47 So. 166, 18 L. R. A. (N. S.) 568; § 10267, Code.

In the recent case of Boykin, Solicitor General, v. Hopkins et al. (Ga. Sup.) 162 S. E. 796, 799, 802, the Georgia court overruled its case of Atlanta Title & Trust Co. v. Boykin, 172 Ga. 437, 157 S. E. 455, 458. In arriving at the conclusion that the applicant sought to engage in the practice of law unlawfully, that court declared that acts constituting the practice of law are: To act as an attorney in fact for the settlement or adjustment of any and all claims; act as an attorney in fact for customers in procuring competent attorneys at law to represent such customers in any court or before any judicial body in this, state in any contested or uncontested case or matter pending before such court or body, when an attorney at law is necessary; and furnish legal advice or legal services in connection with matters pertaining to the law.

The court said: "We more readily reach this conclusion in view of the momentous importance of the question. Permitting corporations to practice law, without any of the restraints imposed upon individuals, who would not be licensed to practice law in or out of the courts unless they possessed good moral character and the necessary legal learning, *will tend to commercialize, degrade, and prostitute the noble profession of the law*." Boykin v. Hopkins (Ga. Sup.) 162 S. E. 796, 802. (Italics supplied.)

The conclusion of that court that such acts of the proposed corporation would constitute the practice of law, speaking through Mr. Justice Hines as to "what constitutes the practice of law in the absence of a statute," said:

"3. We come now to consider and determine what constituted the practice of law in this state at the time the application was made for the grant of the charter involved in this case, and what constituted the practice of law in this state prior to the act of August 7, 1931 (Acts 1931, p. 191 et seq.), which now defines the practice of law in this state. * * * As we have undertaken to show, no statute was passed in this state which undertook to define the practice of law, prior to the above Act of August 7, 1931; and to determine what constituted the practice of law prior to the passage of that act we must look to the general law of force in this state at that time. In Bird v. Breedlove, 24 Ga. 623, this court held that there was no law in this state which restricted to attorneys at law the business of attending to applications for pardons. No authority was cited by the court to sustain this proposition, which was based upon the fact that the court knew of no law so restricting this business. Giving full effect to this decision, there is nothing therein which would authorize the grant of this charter, which, as we shall undertake hereafter to show, expressly confers upon the corporation the right to practice law, if the same were granted. In that case this court did not undertake to define what constituted the practice of law. *We shall now undertake to do so.*

"The practice of law is not limited to the conduct of cases in court. State v. Richardson, 125 La. 644, 51 So. 673. 'In a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts, by which legal rights are secured, although such matter may or may not be depending in a court.' 49 C. J. 1313 (section 5) 4; Eley v. Miller, 7 Ind. App. 529, 34 N. E. 836. So, where the business of a solicitor was carried on under the name of a qualified person, but under an arrangement by which the solicitor was in fact the employee of another person who was unqualified to practice, and the latter attended summonses at chambers and did other professional work without the solicitor's direct authority, it was held that he was acting as a solicitor without having been admitted or qualified., Abercrombie v. Jordan, 8 Q. B. D. (Eng.) 187, 30 W. R. 810. To the same effect is In re Simmons, 15 Q. B. D. (Eng.) 348, 33 W. R. 706. So in a case wherein it was shown that the proceedings in a suit, such as the suing out of the writ, declaration, etc., were taken under the name of Davis and Plasted, and that their names were on all the papers and notices in the cause, it was held that the defendant Davis had held himself out as an attorney in the cause, and was liable to the penalty for practicing as an attorney without having entered his certificate, although it was shown by the terms of the partnership that Plasted was to have to himself all the profits of the business arising from his own connection, that the action in question was prosecuted by him for his own benefit only, and that the defendant derived no advantage from it whatever. Edmondson v. Davis, 4 Esp. (Eng.) 14. A suspended attorney cannot procure the issuance of process on behalf of a principal. Cobb v. Judge, 43 Mich. 289, 5 N. W. 309; Paul v. Purcell, 1 Browne (Pa.) 348. Any advice given to clients, or action taken for them, in matters not connected with the law, is practicing law; and therefore it is practicing law to give advice as to the rights of a person admitted to the chain gang for a failure to pay a fine, and to undertake to procure the acceptance of the fine and the release of such person. In re Duncan, 83 S. C. 186, 65 S. E. 210, 211, 24 L. R. A. (N. S.) 750, 18 Ann. Cas. 657. In that case the Supreme Court of South Carolina said: 'It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings, and other papers incident to actions and special proceedings * * * on behalf of clients before judges and courts, and, in addition, conveyancing,

the preparation of legal instruments of all kinds, and, in general, all advice to clients, and all action taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law.'

"The decision in the case just cited was followed in Re Pace, 170 App. Div. 818, 824, 156 N. Y. S. 641. The New York court fully adopted and approved the definition of what constitutes the practice of law as laid down by the Supreme Court of South Carolina. ' "The practice of the law," as the term is now commonly used, embraces much more than the conduct of litigation. The greater, more responsible, and delicate part of a lawyer's work is in other directions. Drafting instruments creating trusts, formulating contracts, drawing wills and negotiations, all require legal knowledge and power of adaptation of the highest order. Besides these employments, mere skill in trying lawsuits where ready wit and natural resources often prevail against profound knowledge of the law, is a relatively unimportant part of the lawyer's work.' People v. Title Guarantee, etc., Co., 180 App. Div. 648, 168 N. Y. S. 278, 280.

"It is common knowledge that a larger, if not the greater, part of the work of the bar to-day is out of court, or office work. People v. Alfani, 227 N. Y. 334, 125 N. E. 671. The drafting and supervising of the execution of wills has been held to constitute practicing law. People v. People's Trust Co., 180 App. Div. 494, 167 N. Y. S. 767. *So it has been held that a collection agency which undertakes to furnish legal services where they may be necessary is engaged in the practice of law.* In re Co-Operative Law Co., 198 N. Y. 479, 92 N. E. 15, 32 L. R. A. (N. S.) 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879. The practice of law involves, not only appearance in court in connection with litigation, but also services rendered out of court. 'In litigated matters it involves not only the actual representation of the client in court, but also services rendered in advising a client as to his cause of action or defense. The practice of law also includes the giving of advice or rendering services requiring the use of legal skill or knowledge.' People v. People's Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901, 907. In the case just cited, the following definition of practicing law was approved: 'Practicing as an attorney or counselor at law, according to the laws and customs of our courts, is the giving of advice or rendition of any sort of service by any person, firm, or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill.' The practice of law is not limited to the conduct of cases in court, but embraces the preparation of pleadings and other legal papers and conveyances, and the giving of advice in matters connected with the law, and includes representing a creditor in bankruptcy proceedings, or in the collection of a claim against one who has made a general assignment for the benefit of creditors. Meisel & Co. v. National Jewelers' Board of Trade, 90 Misc. Rep. 19, 152 N. Y. S. 913. The definition of what constitutes the practice of law as laid down by the Supreme Court of South Carolina in Re Duncan, supra, was approved and followed in Barr v. Cardell, 173 Iowa, 18, 155 N. W. 312.

"So we are of the opinion that the practice of law, at the time the application for charter in this case was made, was not confined to practice in the courts of this state, but was of larger scope, including the preparation of pleadings and other papers incident to any action or special proceeding in any court or other judicial body, conveyancing, the preparation of all legal instruments of all kinds whereby a legal right is secured, the rendering of opinions as to the validity or invalidity of the title to real or personal property, the giving of any legal advice, *and any action taken for others in any matter connected with the law.*" (Italics supplied.)

█ It is unnecessary to observe, a fact of common knowledge, that it has been the usual business of a lawyer, for the past one hundred years in this state, as shown by the decisions we have cited, to engage in office practice not necessitating representation in court, as well as in cases needed in and about the collection and settlement of claims and demands.

█ The acts recited in the petition constituted the practicing of law as defined by the statutes relating to and defined in General Acts of 1931, p. 606. Such was the legislative intent, and is the construction placed by this court on the several statutes and the common law relating to and regulating the practice of law and the duty of an attorney to his client.

With this observation we come to the consideration of our decision in Kendrick v. State, 218 Ala. 277, 120 So. 142; Id., 218 Ala. 279, 120 So. 144.

There are distinguishable features between the case at bar and the Kendrick Case which render that case inapt as an authority against the judgment of ouster rendered against defendant: (1) There is no expression in the Kendrick Case of the court's consideration and decision dealing with any conduct of the defendant in and about his collection business in contracting with his patrons *to turn over to his lawyer for legal proceeding* or purposes, or any legal claims being handled by him, *when in his judgment it was necessary that legal proceedings be had for the collection of them;* (2) nor anything as to any custom of his in said business in exacting from the debtor fees in the collection of

notes under the usual provisions contained in notes for the collection of costs, including a reasonable attorney's fee incident to making the collection; (3) nor was there any question concerning the defendant adopting in his course of that business methods of threatening the debtor with legal proceedings for the collection of the claims as a means of forcing collection; (4) and further, the statute there considered (General Acts 1927, p. 669, amending section 6248, Code of 1923, held as offending section 45 of the Constitution by including therein business of collecting claims by demand or negotiation out of court, not theretofore regarded as practice of law, "which is defined as exercise of profession of law for purpose of gaining livelihood"; (5) and this act is further differentiated from the act dealt with in the Kendrick Case, in that this is an original act, with a broad and more comprehensive title—sufficiently broad to cover all the provisions of the act.

We are of opinion that the decision in the Kendrick Case may be distinguished as above indicated.

■ It is well established that the act in question (Gen. Acts 1931, p. 606) is a valid enactment under the police power, and offends neither state nor Federal Constitutions; is not usurpation of judicial power; does not deprive of liberty or property without due process; neither denies to citizens equal civil rights, nor grants special privileges and immunities; does not violate, impair, or deny rights retained by the people, and does not violate the Fourteenth Amendment to the Federal Constitution (6 C. J. 569; McCaskell v. State, 53 Ala. 510; Brooks v. State, 88 Ala. 122, 6 So. 902 [Stone, C. J.]; In re Dorsey, 7 Port. 295, 388; Ex parte Wideman, 213 Ala. 170, 104 So. 440; Harris v. State ex rel. Wilson, Sol., 215 Ala. 56, 109 So. 291; Robinson v. State ex rel. James, 212 Ala. 459, 102 So. 693; Cummings v. State ex rel. Biggs, Solicitor, 214 Ala. 209, 106 So. 852)—as applied to the facts of this case.

■ The petition was filed under section 9932 of the Code. The burden of proof in an action of *quo warranto, where the respondent admits holding and exercising the powers and duties of an office,* devolves on the respondent to show rightful authority for such holding, and the exercise of the powers thereof. State ex rel. Knox v. Dillard, 196 Ala. 539, 72 So. 56. This petition is tested by demurrer, and the question turns upon the legal effect of the acts alleged to have been done and committed. If such averments have shown the respondent was engaged in the practice of law, the burden of showing due authority by license, as required, would devolve upon such a respondent. Robinson v.

State ex rel. James, supra; Cummings v. State ex rel. Biggs, Solicitor, supra.

To conclude, the petition makes out a case against the defendant to the effect that he has been, is now, and proposes to continue the practice of law, a profession requiring a license, and that he has no such license; thereby requiring the defendant to carry the burden of proof of showing proper authority by license to practice the profession of law.

The judgment of exclusion and prohibition against defendant, until he has legally qualified to practice law by securing the proper license therefor, is affirmed.

Affirmed.

All the Justices concur.