# Mutual Bankers Corporation v. Covington Bros. & Co.

Dec. 16, 1938.
As Modified on Denial of Rehearing Feb. 14, 1939.

JOE L. PRICE, Judge.

TURNER & TURNER and CLYDE BURNETT for appellant.

J. D. MOCQUOT for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal is prosecuted by the Mutual Bankers Corporation from a judgment of the McCracken circuit court, sustaining the general demurrer of Covington Brothers & Company (defendant below) to its petition and second amended petition and dismissing same.

The appellant, plaintiff below, brought this action in the McCracken circuit court, in its petition setting out that it had been duly incorporated under the laws of the state of Delaware and that its principal office and place of business was in Tampa, Florida, and that the defendant, Covington Brothers & Company, was also a corporation, having been duly incorporated under the laws of the state of Kentucky and having its office and chief place of business in Paducah, Kentucky.

Further, the petition alleged that on July 24, 1935, the plaintiff and defendant had entered into a contract, under and by the terms of which the defendant had assigned to plaintiff for collection certain notes and claims, amounting, with accrued interest thereon, to $3,526.83, which were due and owing by R. D. Bradley, a retail grocer of Mayfield, Kentucky; that under the provisions and terms of the aforesaid contract, it was certified that Covington Brothers & Company had become a subscriber for certain collection services, to be rendered by the Mutual Bankers Corporation in consideration of a payment made it, and that, for such services rendered, commissions were to be paid the Mutual Bankers Corporation out of the collections made upon the claims forwarded, which were to be graded according to the amount and character of the claims so sent and collected, and among which provisions was the one here pertinent, that "on payments of $500.00 or over" a commission of 15% was to be charged; that the terms of the contract, among others, provided that the subscriber, Covington Brothers & Company, "agrees to pay the commission herein mentioned on all claims withdrawn or ordered dropped by the subscriber or settled directly with the subscriber in full or in part" and that "for value received all claims forwarded to said corporation for collection hereunder, are hereby fully assigned to said corporation"; that further it is provided by the agreement, as to all claims sent the Mutual Bankers Corporation for collection, that it "agrees to use all moral and legal measures advisable, to effect collection of claims listed with it for collection under the terms of this agreement all without docket or attorney's fees or any charge other than that herein stipulated, the subscriber granting the corporation all privileges and rights of collection, in any manner said corporation may deem fit, that the subscriber now has or may have."

Further, the petition alleged that after Covington Brothers & Company had sent the plaintiff for collection the open account and notes owing it by R. D. Bradley, as stated supra, they were withdrawn from the hands of appellant; that such action was in violation of the contract and came within its provisions applicable in such case, that the claim forwarder would pay the commission set out in the contract on all claims sent to it and later withdrawn or ordered dropped by forwarder.

It sued Covington Brothers and Company for 50%

of $3,526.83, the amount it had collected from R. D. Bradley, or, that is to say, the sum of $1,763.41 and costs.

To this petition the defendant filed a general demurrer, which upon submission was by the court ordered sustained, with leave given plaintiff to amend. Whereupon, plaintiff filed its amended petition in September, 1936, by which it alleged that it had been employed by the defendant and had taken all necessary steps to collect said account and notes, as stated supra, but that defendant had thereafter, to-wit, on November 8, 1935, withdrawn the account and notes from plaintiff.

The defendant thereupon by attorney moved, and it was so ordered, that its demurrer to plaintiff's petition be extended to said amended petition. At the November term of court, demurrer to plaintiff's petition, which had been extended to its amended petition, being submitted to the court, it ordered that the same be overruled.

To the petition as thus amended, defendant, in November, 1936, filed motion to make more specific and, without waiving its general demurrer, thereafter (at the May term, 1937, of court) filed its answer denying that any consideration had passed from plaintiff to defendant for any alleged assignment of any part or all of said claim against Bradley. The answer also alleged that before any collection was made by plaintiff of the Bradley account and notes sent it, the defendant withdrew same and any authority to collect same from the plaintiff and it further traversed all the allegtions of the petition.

By a second paragraph, defendant affirmatively pleaded that plaintiff was a corporation, which was not authorized under the laws of this state to practice law or to perform legal services for the defendant or other person or persons and that if the contract sued on was entered into between plaintiff and defendant, same was a contract for plaintiff's furnishing to defendant legal services, in violation of the laws of this state, and was therefore void and prayed that the petition be dismissed.

Following the filing of this answer, it was upon a later day of the same term ordered that:

"By agreement of parties plaintiff is allowed to withdraw its amended petition * * * and defendant

**36**

is allowed to withdraw its answer * * * and plaintiff is given leave to file amended petition."

At a later day of the same term, plaintiff filed its second amended petition.

On motion of defendant's attorney, it was ordered that its demurrer previously filed to the petition and amended petition be extended to said second petition.

Plaintiff by its second amended petition, after first adopting all the allegations of the original petition not in conflict with it, alleged that by mistake the draftsman of its original petition stated that under the terms of the written contract had between the parties, upon defendant's withdrawal of the Bradley account and notes from plaintiff, it was entitled to collect 50% of the account or $1,763.41.

Further, it alleged that such construction of the contract and the terms thereof and the allegations of the original petition were incorrect and due to a mistake; also, that under the written contract, as set out in the original petition, the account and notes of R. D. Bradley were placed with plaintiff for collection by defendant; that plaintiff was able, ready and willing to perform the services and duties it was to perform under said contract; that defendant withdrew from plaintiff the claim and that its act, in so doing after the account had been placed with plaintiff under said written contract and according to the terms thereof, made the defendant liable to plaintiff in the amount of the commission due to be charged on said claim, which was agreed to and set out in said contract to be 15% of the claim or $529.02, for which amount, with interest thereon from date upon which claim was withdrawn, the defendant became indebted to it and for the recovery of which, with costs, it prayed judgment against the defendant.

The defendant's general demurrer, extended to this amended petition, was sustained by the court, when, it refusing to plead further, its petition was dismissed.

The appellant, challenging the propriety of the court's judgment, in thus sustaining the demurrer to its petition and dismissing it, has appealed, contending, for the reversal of the court's alleged erroneous ruling complained of, that under the pleadings and law of this case, the only question submitted for our review and decision is whether or not the contract here involved and entered.

into between the parties, and which constitutes the basis of appellant's cause of action, is a reasonably valid contract and enforceable according to its terms.

Contending that such is its character, it argues that the appellee is a corporation, engaged in the wholesale grocery business, and that in conducting such business many of its customers become indebted to it and it becomes advisable and even necessary to collect such debts owing it; that in such a situation, several methods are open and available to defendant in collecting these delinquent accounts; that it could write letters from its own office to its debtors; it could employ a man on salary or commission to go out and undertake their collection by personally calling upon the debtors; or it could employ a person, firm or corporation engaged in the business of collecting claims on a commission basis to collect them; that in the instant case, the defendant chose the last one of the suggested methods as being feasible and the one preferred by it, whereby it engaged the services of the plaintiff collecting agency to collect the Bradley claim upon a commission basis, as provided for by the terms of the contract had between them.

The defendant (here appellee) on the other hand contends that the contract here sued on speaks for itself, as being an ordinary contract calling for the personal services of the appellant as a collection agency, under which all claims defendant wished to place with it for collection were to be collected by it upon the commission basis therein specified.

It is defendant's further contention that appellant, by the terms of this contract had with it, or in undertaking to collect claims sent it for certain commission to be paid out of the collections made, "was undertaking to engage in the semi-practice of law, either by itself, its officers or agents, or by someone employed to collect and act for it." Attorney for appellee also argues, in support of the propriety of the court's ruling sustaining the demurrer to the petition, that "this case went out on demurrer to the petition and as twice amended, and nowhere is there anything but a conflict between the terms of the contract sued on and the allegations of the petition."

We, however, are not inclined to view this contract as being one of the nature asserted by appellee or, as stated supra, as being one "undertaking to engage in

the semi-practice of law" by an incorporated collecting agency and therefore void and unenforceable, as being a contract made in violation of the laws of the state, prohibiting it from practicing law or performing legal services on behalf of the defendant, although it may be conceded the general rule as to this, as stated in 13 Am. Jr. 838, Section 837, is that:

> "While a corporation is in some sense a person and for many purposes is so considered, yet, as regards the learned professions which can only be practiced by persons who have received a license to do so after an examination as to their knowledge of the subject, it is recognized that a corporation cannot be licensed to practice such a profession."

See further, for a very comprehensive discussion and citation of authorities on this subject, 7 C. J. S., Section 3, subsection (g), entitled "Practice of Law," pages 703-705 and footnote 30, page 704, of this volume, dealing with acts or services held to constitute practice of law. In subnote 5 thereto, there is cited Berk v. State, 225 Ala. 324, 142 So. 832, 84 A. L. R. 740, as holding that "anyone holding himself ready, able and willing to represent, out of court, another in the adjustment and collection of claims, and turning cases over to his attorney when necessary in order to collect is practicing law."

On the other hand, there is collated in note 31, page 705, of the same text numerous cases holding that acts or services contracted for do not constitute practice of law, among which, in subnote 6 thereto, is the case of Cohn v. Thompson, 128 Cal. App. Supp. 783, 16 P. (2d) 364, the holding of which is thus summarized:

> "Collection agent who was not an attorney was held not to be engaged in the 'practice of law' where a claim was assigned to him under an agreement that, if he could not collect the claim without suit, he was to hire an attorney at his expense and sue in his own name, and, if the collection was made, he was to remit the balance to the assignor, after deducting costs and a percentage for his services."

In the Cohn Case, supra, it was held, as stated in the first of the syllabi, that "assignment for collection without consideration from assignee vests legal title in assignee, which is sufficient to enable him to recover,

although assignor retains equitable interest in thing assigned.''

In the instant case, the language of the petition, as well as of the contract therein set out, is that ''all claims forwarded to said corporation for collection hereunder are hereby fully assigned to said corporation,'' just as it appears was the case in the Cohn Case, where the language of the opinion, as to what is the character of the contract made to collect in such case, is as follows:

> ''Does an assignee for collection who holds the legal title to a claim, and possesses the right to sue thereon and to employ attorneys to represent him, engage in the practice of law, where under and by virtue of the contract assignment, and in consideration thereof, the assignee agrees, in the event that the claim cannot be collected without suit, to sue in his own name and hire an attorney at his own expense to prosecute the suit, and, if the collection is made, after deducting the costs and a certain percentage for his services, the assignee agrees to remit the balance to his assignor? No case has been cited, nor after thorough search have we been able to find any case, which holds that a collection agency is practicing law under such circumstances.''

We are inclined to adhere to and approve the rule announced in the Cohn Case upon a factual situation arising under a contract, both very alike and analogous with those here presented, and therefore to conclude that the contract here sued on, whereby it was merely provided that the plaintiff collecting agency undertook to collect claims forwarded it by the defendant upon a contingent fee basis or to be paid certain commissions out of the collections made, whether effected by personal solicitation or by attorneys employed by it to institute suit therefor, did not constitute a contract by plaintiff to do an unlawful act, as being an agreement to render personally professional services or practice law for the defendant.

While appellee contends that such was the conclusion of the trial court and constituted the reason and grounds for its ruling in sustaining the demurrer to plaintiff's petition and dismissing it, we need only say that if such were the case, we regard such supporting reason for the court's ruling as erroneous.

However, our discussion of this contention made in brief of appellee we feel has served to lead us beyond and away from the one question, as argued by counsel for appellant, presented for our decision, which is, Was the contract here entered into by the parties valid, and if so, was the term thereof, providing that the defendant agreed with plaintiff to pay the commission set forth therein on "all claims withdrawn or ordered dropped by the subscriber or settled directly with the subscriber in full or in part," enforceable?

It is pleaded, undenied and, in fact, admitted by the defendant's demurrer, that the defendant, Covington Brothers & Company, sent for collection the Bradley account and notes to the plaintiff under and pursuant to this term of the contract, that if same were withdrawn from it or ordered dropped by it, it would pay to plaintiff the commission as in the contract provided for. Therefore it would follow, the contract being as we conclude a valid one and this, its term, also a valid and reasonable one, violated, that the defendant (here appellee) should be required to pay the commission as contracted for by it in the event of its withdrawal of the claim.

Such being our conclusion, it further follows that we are of the opinion that the trial court committed a reversible error in sustaining the appellee's demurrer to the petition and petition as amended and dismissing it and for which reason its ruling and judgment in so doing must be and it is reversed.

Judgment reversed.